1

**STEPTOE & JOHNSON LLP**
Anthony J. Anscombe (SBN 135883)
Cody DeCamp (SBN 311327)
One Market Plaza
Spear Tower, Suite 3900
San Francisco, CA  94105
Telephone: (415) 365-6700
Facsimile: (312) 577-1370
aanscombe@steptoe.com
cdecamp@steptoe.com

2

3

4

5

6

**STEPTOE & JOHNSON LLP**
Sarah D. Gordon (*pro hac vice* forthcoming)
Conor P. Brady (*pro hac vice* forthcoming)
1330 Connecticut Avenue, NW
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
sgordon@steptoe.com
cbrady@steptoe.com

7

8

9

10

11

Attorneys for Defendants The Hartford Financial
Services Group, Inc. and Sentinel Insurance Co., Ltd.

12

13

## UNITED STATES DISTRICT COURT

14

## NORTHERN DISTRICT OF CALIFORNIA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| FRANKLIN EWC, INC. and KATHY FRANKLIN, | Case No.: |
| | **NOTICE OF REMOVAL** |
| Plaintiffs, | [REMOVAL FROM THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA, CASE NO. C20-00888] |
| v. | |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC., SENTINEL INSURANCE COMPANY, LTD., and Does 1 through 10, inclusive, | |
| Defendants. | |

NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants The Hartford Financial Services Group, Inc. ("HFSG") and Sentinel Insurance Company, Ltd. ("Sentinel") (together, "Defendants")[1] hereby remove the above-captioned action from the Superior Court of the State of California, County of Contra Costa, to the United States District Court for the Northern District of California. Defendants remove this case based on diversity of citizenship in accordance with 28 U.S.C. § 1332. In support of this Notice of Removal, Defendants state as follows.

## I.     INTRODUCTION

1.      On May 21, 2020, Plaintiffs Franklin EWC, Inc. ("Franklin EWC") and Kathy Franklin (together, "Plaintiffs") commenced this action in the Superior Court of the State of California, County of Contra Costa, with the filing of a Complaint, assigned Case No. C20-00888. *See* Ex. A, Complaint ("Compl."). Plaintiffs served Defendants on June 3, 2020.[2] This Notice of Removal is timely filed within thirty (30) days of service, in accordance with 28 U.S.C. § 1446(b).

2.      In their Complaint, Plaintiffs allege that Franklin EWC "owns, operates, manages, and/or controls the waxing salon known as European Wax Center – Fresno – Riverpark ('EWC Fresno')" located in Fresno, California. Compl. ¶ 20; *see also id.* ¶ 1. Plaintiffs allege that "[b]eginning on March 19, 2020, EWC Fresno was forced to close its doors to the public because of a series of orders issued by the State of California ('Closure Orders')," which "prohibited customers from accessing EWC Fresno's premises due to the Coronavirus Disease 2019 ('COVID-19') pandemic." Compl. ¶ 1. Plaintiffs say that "[a]s a result, Plaintiffs suffered substantial financial losses and had to let go approximately 30 workers." *Id.* Plaintiffs seek to recover those

---

[1] HFSG consents to removal of this action but does not admit it is an appropriate party to this action. The insurance policy at issue in this action was issued to Plaintiff Franklin EWC, Inc. by Sentinel, not HFSG. HFSG fully reserves all rights.

[2] The Complaint also identifies "Does 1 through 10" as Defendants." "In determining whether a civil action is removable on the basis of diversity jurisdiction under section 1332(a) of [Title 28], the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). Accordingly, "Does 1 through 10" are irrelevant to the jurisdictional analysis. *See Gardiner Family, LLC v. Crimson Resource Mgmt. Corp.*, 147 F. Supp. 3d 1029, 1036 (E.D. Cal. 2015).

purported "substantial financial losses" in this case, as well as other damages and declaratory and injunctive relief.

3.     The Complaint asserts nine causes of action against Defendants arising out of an insurance policy contract between Franklin EWC and Sentinel bearing policy number 21SBARS4714: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) bad faith denial of insurance claim, (4) unfair business practices, (5) fraudulent misrepresentation, (6) constructive fraud, (7) unjust enrichment, (8) declaratory relief, and (9) injunctive relief.  *See generally* Compl.

## II.     BASIS FOR REMOVAL

4.     Defendants remove this case based on diversity of citizenship in accordance with 28 U.S.C. § 1332, as this action involves a dispute between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  *See* U.S.C. §§ 1332, 1441, 1446.  Indeed, as explained further below, Plaintiffs are citizens of California, Defendants are citizens of Connecticut and Delaware,[3] and the amount in controversy exceeds $75,000.

### A.     There is Complete Diversity of Citizenship Between the Parties

5.     Plaintiffs allege that Franklin EWC is a California corporation with its principal place of business in California.  *See* Compl. ¶¶ 1, 20.  Franklin EWC is thus a citizen of California. *See* 28 U.S.C. § 1332(c)(1).

6.     Plaintiffs allege that Kathy Franklin is a resident of California and is the sole owner and operator of Franklin EWC.  *See* Compl. ¶ 21.  Ms. Franklin is thus a citizen of California.

7.     HFSG is a corporation incorporated in the state of Delaware with its principal place of business in Connecticut.  *See id.* ¶ 22.  It is a publicly traded holding company that owns Sentinel, and had no direct involvement or participation in any of the matters alleged in the Complaint.  Sentinel is a Connecticut corporation with its principal place of business in Hartford, Connecticut.  *See id.* ¶ 23.  HFSG and Sentinel are thus citizens of Delaware and Connecticut.

---

[3] As explained in footnote 2 above, "Does 1 through 10" are irrelevant to the jurisdictional analysis.

NOTICE OF REMOVAL

8.      Accordingly, there is complete diversity of citizenship between Plaintiffs and Defendants.

**B.      The Amount in Controversy Exceeds $75,000**

9.      Under 28 U.S.C. § 1332, diversity subject matter jurisdiction requires that the matter in controversy "exceed[] the sum or value of $75,000, exclusive of interest and costs[.]" Where, as here, a complaint does not seek a specific amount of damages, a defendant's "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* Although Plaintiffs do not quantify their alleged damages, it is readily apparent from the Complaint that the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.      Plaintiffs allege that they have "suffered substantial financial losses and had to let go approximately 30 workers" due to the coronavirus and certain state and local governmental orders directing non-essential businesses to close in response to the virus. *See* Compl. ¶¶ 1, 5-8. Plaintiffs' allegations are focused primarily on non-party EWC Fresno's alleged business income losses and other damages. According to Plaintiffs, EWC Fresno—"a wildly successful and award-winning waxing salon," *id.* ¶ 32—"was forced to close its doors to the public and let 30 workers go," *id.* ¶ 41. Plaintiffs allege that "[a]t all relevant times, Franklin EWC has owned, leased, managed, and/or controlled the Insured Premises," *i.e.*, the EWC Fresno salon located at 7855 North Via Del Rio, Fresno, California 93720, which is the premises insured in the subject insurance policy contract between Sentinel and Franklin EWC. *See id.* ¶ 20. Plaintiffs allege that "[d]ue to the Closure Orders, as well as the presence of the Coronavirus in, on, and around the Insured Premises, Plaintiffs have suffered and continue to suffer substantial lost business income and other financial losses." *Id.* ¶ 44. Plaintiffs characterize their business income losses as "substantial" and "extraordinary." *See, e.g.*, *id.* ¶¶ 44-45.

3

NOTICE OF REMOVAL

11.    Plaintiffs seek, among other things, "compensatory, general, and other monetary damages (including all foreseeable consequential and incidental damages for diminution in value, loss of use, and other incidental damages and out-of-pocket expenses)," restitution or disgorgement, punitive and exemplary damages, attorneys' fees, and declaratory and injunctive relief. *See* Compl. ¶¶ 64, 70, 78, 88, 96, 102, 108, 120, 123, and pp. 26-27 (Prayer for Relief).

12.    The amount in controversy for Plaintiffs' request for declaratory and injunctive relief is "the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (citations omitted); *see also Cohn v. Petsmart*, 281 F.3d 837, 840 (9th Cir. 2002) (citation omitted); *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997).   In this case, the object of the litigation is the value of Plaintiffs' claim under the insurance policy, *i.e.*, the amount of money Sentinel would pay to Plaintiffs if the claim is covered under the policy.   As noted above, although Plaintiffs do not specify the value of their claim, Plaintiffs do allege that they have suffered "substantial" and "extraordinary" business losses since mid-March of 2020.   Such losses, coupled with Plaintiffs' allegations of other ongoing financial damages, likely exceed the $75,000 jurisdictional threshold.

13.    Moreover, punitive damages are included in the jurisdictional threshold where state law permits a plaintiff to recover punitive damages.   *See Bell v. Preferred Life Assurance Soc.*, 320 U.S. 238, 240 (1943); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002) (citations omitted).   Past and future attorneys' fees are also considered when determining the amount in controversy.   *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794-95 (9th Cir. 2018); *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal" and is instead "determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious").

14.    Defendants deny that Plaintiffs are entitled to any recovery at all, but, as alleged, the amount in controversy plausibly exceeds $75,000, exclusive of interests and costs.

NOTICE OF REMOVAL

### III.  PROCEDURAL REQUIREMENTS

15.  This Notice of Removal is being filed within 30 days of service, and less than one year after commencement of this action, in accordance with 28 U.S.C. § 1446.

16.  Attached hereto as Exhibit A is "a copy of all process, pleadings, and orders served upon" Defendants.  *See* 28 U.S.C. § 1446(a).

17.  A copy of this Notice of Removal is being filed with the Clerk of the Contra Costa Superior Court and is being served on counsel of record pursuant to 28 U.S.C. § 1446(d).

18.  "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  Defendants need not obtain the consent of "Does 1 through 10" because they are unnamed and unknown parties who have not been served.  *See Tatevossian v. Wells Fargo Bank*, No. CV 16-03135, 2016 WL 4367235, at *3 (C.D. Cal. Aug. 12, 2016) (explaining "Doe Defendants" need not consent to removal).

### IV.  VENUE AND INTRADISTRICT ASSIGNMENT

19.  Under 28 U.S.C. § 1441(a), venue is proper in this Court as a district or division embracing the place where the state action was pending.

20.  Pursuant to Northern District of California Civil Local Rule 3-2(c) and (d), this case should be assigned to the San Francisco Division or the Oakland Division, as at least a substantial part of the alleged events giving rise to this action occurred in Contra Costa county.

### V.  CONCLUSION

WHEREFORE, Defendants hereby remove this matter from the Contra Costa Superior Court to the United States District Court for the Northern District of California.

NOTICE OF REMOVAL

1

2  Dated:  July 2, 2020                                  Respectfully submitted,

3

4                                                          */s/  Anthony J. Anscombe*

5                                                         STEPTOE & JOHNSON LLP

6                                                         Anthony J. Anscombe (SBN 135883)
                                                          Cody DeCamp (SBN 311327)
7                                                         One Market Plaza
                                                          Spear Tower, Suite 3900
8                                                         San Francisco, CA  94105
                                                          Telephone: (415) 365-6700
9                                                         Facsimile: (312) 577-1370
                                                          aanscombe@steptoe.com
10                                                        cdecamp@steptoe.com

11

12                                                        Sarah D. Gordon (*pro hac vice* forthcoming)
                                                          Conor P. Brady (*pro hac vice* forthcoming)
13                                                        1330 Connecticut Avenue, NW
                                                          Telephone: (202) 429-3000
14                                                        Facsimile: (202) 429-3902
                                                          sgordon@steptoe.com
15                                                        cbrady@steptoe.com

16

17                                                        *Attorneys for Defendants The Hartford Financial
                                                          Services Group, Inc. and Sentinel Ins. Co., Ltd.*

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL

# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
06/03/2020
CT Log Number 537738628

**TO:**  Michael Johnson, Legal Assistant
The Hartford
1 Hartford Plz, HO-1-09
Hartford, CT 06155-0001

**RE:**  **Process Served in Delaware**

**FOR:**  The Hartford Financial Services Group, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | FRANKLIN EWC, INC. and KATHY FRANKLIN, Pltfs. vs. The Hartford Financial Services Group, Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # C2000888 |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/03/2020 at 11:18 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/03/2020, Expected Purge Date: 06/08/2020<br><br>Image SOP<br><br>Email Notification,  Michael Johnson  MICHAEL.JOHNSON@THEHARTFORD.COM<br><br>Email Notification,  Fiona Rosenberg  Fiona.Rosenberg@thehartford.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Trust Company<br>155 Federal St Ste 700<br>Boston, MA 02110-1727 |
| **For Questions:** | 800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

Page 1 of  1 / KS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



# PROCESS SERVER DELIVERY DETAILS

**Date:**          Wed, Jun 3, 2020

**Server Name:**   Parcels Inc.

**Location:**      Wilmington, DE

| | |
|---|---|
| Entity Served | THE HARTFORD FINANCIAL SERVICES GROUP, INC. |
| Agent Name | THE CORPORATION TRUST COMPANY |
| Case Number | 20-888 |
| Jurisdiction | DE |



SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED

MAY 21 2020

CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
THE HARTFORD FINANCIAL SERVICES GROUP, INC., SENTINEL INSURANCE COMPANY,
LTD., and Does 1 through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
FRANKLIN EWC, INC., and KATHY FRANKLIN,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 o más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER (Número del Caso): |
|---|---|
| (El nombre y dirección de la corte es) | C20 - 00888 |
| CONTRA COSTA COUNTY SUPERIOR COURT | |
| 725 Court Street, Martinez, CA 94553 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: (El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)
Nanci E. Nishimura (152621) Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Rd., Suite 200, Burlingame, CA 94010 / T: 650-697-6000

| DATE: | | Clerk, by | | Deputy |
|---|---|---|---|---|
| (Fecha) | MAY 21 2020 | (Secretario) | B. POOL | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☒ on behalf of (specify): THE HARTFORD FINANCIAL SERVICES GROUP, INC.

   under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

COTCHETT, PITRE & McCARTHY LLP
NANCY E. NISHIMURA (SBN 152621)
nnishimura@cpmlegal.com
BRIAN DANITZ (SBN 247403)
bdanitz@cpmlegal.com
JAMES G. DALLAL (SBN 277826)
jdallal@cpmlegal.com
ANYA N. THEPOT (SBN 318430)
athepot@cpmlegal.com
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Plaintiffs*

FILED

MAY 21 2020

CLERK CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By: _____
R. Ball, Deputy Clerk

PER LOCAL RULE, THIS
CASE IS ASSIGNED TO
DEPT. 33 FOR ALL
PURPOSES

SUMMONS ISSUED

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF CONTRA COSTA

| | |
|---|---|
| FRANKLIN EWC, INC., and KATHY FRANKLIN | Case No. **C20 - 00888** |
| Plaintiffs, | **COMPLAINT FOR:** |
| v. | 1. **BREACH OF CONTRACT,** |
| | 2. **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING,** |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC., SENTINEL INSURANCE COMPANY, LTD. and Does 1 through 10, inclusive, | 3. **BAD FAITH DENIAL OF INSURANCE CLAIM,** |
| | 4. **UNFAIR BUSINESS PRACTICES,** |
| Defendants. | 5. **FRAUDULENT MISREPRESENTATION,** |
| | 6. **CONSTRUCTIVE FRAUD,** |
| | 7. **UNJUST ENRICHMENT,** |
| | 8. **DECLARATORY RELIEF, and** |
| | 9. **INJUNCTIVE RELIEF** |
| | **JURY TRIAL DEMANDED** |

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF

72.6705

1

## TABLE OF CONTENTS

2   I.     INTRODUCTION .................................................................................................... 3

3

4   II.    COVID-19 AND CLOSURE ORDERS .................................................................. 4

5   III.   WIDESPREAD DENIAL OF INSURANCE CLAIMS ......................................... 5

6   IV.    INSURANCE DEFENDANTS AND DENIAL OF COVERAGE ......................... 6

7   V.     VIOLATIONS OF CALIFORNIA LAW .............................................................. 7

8   VI.    PARTIES ................................................................................................................. 7

9
        A.    Plaintiffs ...................................................................................................... 7
10
        B.    Insurance Company Defendants ................................................................. 8
11
        C.    Doe Defendants ........................................................................................... 8
12

13  VII.   AIDING AND ABETTING AND CO-CONSPIRATORS .................................... 9

14  VIII.  JURISDICTION AND VENUE ............................................................................. 9

15  IX.    FACTUAL BACKGROUND ............................................................................... 10

16
        A.    EWC Fresno ............................................................................................... 10
17
        B.    Pandemic in California ............................................................................. 10
18
        C.    Closure Orders Issued by State and County Civil Authorities ................ 11
19
        D.    EWC Fresno Forced to Close and Resulting Financial Losses .............. 12
20
        E.    EWC Fresno Suffers Covered Loss .......................................................... 12
21
        F.    Insurance Defendants' Denial of Plaintiffs' Claim ................................. 15
22

23  X.     CAUSES OF ACTION ......................................................................................... 16

24         FIRST CAUSE OF ACTION
           BREACH OF CONTRACT ................................................................................... 16
25
           SECOND CAUSE OF ACTION
26         BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING ........... 17

27         THIRD CAUSE OF ACTION
           BAD FAITH DENIAL OF INSURANCE CLAIM ............................................. 18
28

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF        1

FOURTH CAUSE OF ACTION
UNFAIR BUSINESS PRACTICES UNDER BUS. & PROF. CODE § 17200, ET SEQ. . 19

FIFTH CAUSE OF ACTION
FRAUDULENT MISREPRESENTATION ........................................................ 22

SIXTH CAUSE OF ACTION
CONSTRUCTIVE FRAUD........................................................................ 23

SEVENTH CAUSE OF ACTION
UNJUST ENRICHMENT ......................................................................... 23

EIGHTH CAUSE OF ACTION
DECLARATORY RELIEF ....................................................................... 24

NINTH CAUSE OF ACTION
EQUITABLE INJUNCTIVE RELIEF ........................................................ 26

XI.    PRAYER FOR RELIEF ...................................................................... 26

DEMAND FOR JURY TRIAL ...................................................................... 27

Plaintiffs Franklin EWC, Inc. and Kathy Franklin (collectively, "Plaintiffs") file this Complaint against defendants The Hartford Financial Services Group, Inc., and Sentinel Insurance Company, Ltd. (collectively, "Insurance Defendants"), and Does 1 through 10 ("Doe Defendants"), and allege as follows:

## I.   INTRODUCTION

1.   European Wax Center – Fresno – Riverpark ("EWC Fresno") is a waxing salon located just off California State Route 41 in Fresno, California that is owned by Plaintiff Franklin EWC, Inc.  Franklin EWC, Inc. is registered and maintains its headquarters in Moraga, California. Beginning on **March 19, 2020**, EWC Fresno was forced to close its doors to the public because of a series of orders issued by the State of California ("Closure Orders").  The Closure Orders have **prohibited** customers from accessing EWC Fresno's premises due to the Coronavirus Disease 2019 ("COVID-19") pandemic.  As a result, Plaintiffs suffered substantial financial losses and had to let go approximately 30 workers.

2.   EWC Fresno is a franchise of European Wax Center, a network of over 800 waxing salons through the United States. Plaintiff Kathy Franklin started Franklin EWC in 2011 and has owned and operated EWC Fresno since October 2013. In that time she turned it into one of the most profitable European Wax Center locations in California. The employees had developed many longstanding relationships with the salon's clients, many of whom visited regularly. Based on this enviable record of success, Ms. Franklin chose to invest additional resources in the business in the fall of 2019 and paid for the construction of three new waxing suites, an additional restroom, and a storage room. Many of EWC Fresno's 30 employees had worked there for more than five years, and the business provided them with medical, dental, vision, and 401-K benefits.

3.   To protect its business and employees from the loss caused by a situation like this, Franklin EWC obtained Spectrum Business Owner's Policy No. 21 SBA RS4714 (the "Policy") from Insurance Defendants, which includes applicable business interruption coverage.  In breach of the insurance obligations that Insurance Defendants undertook in exchange for receipt of Plaintiffs' premium payments—which Plaintiffs dutifully and regularly paid—Insurance Defendants denied Plaintiffs' insurance claims arising from the interruption of Plaintiffs' business caused by the

---

Closure Orders.  Insurance Defendants denied the claims notwithstanding the plain language of the Policy, which provides coverage for such losses, and they did so fraudulently in violation of California law.

## II.    COVID-19 AND CLOSURE ORDERS

4.    In March 2020, the New England Journal of Medicine, one of the world's leading peer-reviewed medical journals, published a study that describes severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) (the "Coronavirus"), the official name for the virus that causes COVID-19, as a virus that is transmitted by respiratory droplets that can be suspended in air for several hours.  Over time, these droplets containing Coronavirus fall onto and can physically remain on surfaces, such as metal, glass, plastic, and wood, for several days.  Persons who touch these surfaces, even days later, may become infected.

5.    On **March 12, 2020**, California Governor Gavin Newsom issued Executive Order N-25-20, which requires all California "to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19."

6.    On **March 19, 2020**, California Governor Gavin Newsom issued Executive Order N-33-20, which similarly requires that Non-Essential Businesses statewide, including waxing salons such as EWC Fresno, immediately close their doors to all customers.

7.    As expressly stated in multiple countywide closure orders issued in California (including orders issued by Napa, Solano, Sonoma, Sutter, and Yuba Counties), the recent business closure orders have been issued because the Coronavirus was proliferating onto virtually every surface and object in, on, and around commercial premises such as that belonging to EWC Fresno, and thereby causing **direct physical damage** and loss in and to the immediate area of such commercial premises, and thereby triggering coverage under commercial insurance policies. *See, e.g.*, Order of the Napa County Health Officer ¶ 6 (Mar. 18, 2020) ("This Order is issued based on evidence of increasing occurrence of COVID-19 throughout the Bay Area, increasing likelihood of occurrence of COVID-19 within the County, and the **physical damage to property caused by the virus**."); Order of the Solano County Health Officer No. 2020-04 ¶ 10 (Mar. 30, 2020) ("[T]his

1   Order is given because of the propensity of the virus to spread person to person and also because **the**
2   **virus physically is causing property loss or damage** due to its proclivity to attach to surfaces.");
3   Order of the Sonoma County Health Officer No. C19-05 ¶ 17 (Mar. 31, 2020) ("This order is given
4   because of the propensity of the virus to spread person-to-person, and also because **the virus**
5   **physically is causing property loss or damage** due to its proclivity to stay airborne and to attach
6   to surfaces for prolonged periods of time."); Order of the Sutter County and Yuba County Bi-County
7   Public Health Officer Restricting Activities in Response to COVID-19 Outbreak ¶ 7 (Apr. 6, 2020)
8   (same as March 31 Sonoma County Order).

9        8.      The resulting economic harm from these Closure Orders and from the widespread
10  physical presence of the Coronavirus has been significant.  Millions of California residents have lost
11  their jobs, and hundreds of thousands of California businesses have had to close and are suffering
12  substantial losses, creating unprecedented ripple effects through local, state, and national economies.

13  **III.     WIDESPREAD DENIAL OF INSURANCE CLAIMS**

14       9.      Many, if not most, of the California businesses forced to close their doors to the
15  public had planned ahead by purchasing insurance to safeguard against the business interruption that
16  results from precisely these kinds of civil authority closure orders.  Since having to close down,
17  businesses have filed claims for business interruption coverage with their insurance carriers as a
18  lifeline to save their businesses and, by extension, their employees and communities.  However,
19  Insurance Defendants, and other insurance companies, have **summarily declined coverage**.

20       10.     According to persons knowledgeable about the insurance industry's blanket denials
21  of such business interruption claims:

22            "The [insurance] tactic is always the same . . . . Deny everything you
23            [insurer] owe, slow the payments, don't pay the emergency funds you owe,
24            and then, because there's such carnage, the [insurance] industry goes with
25            their lobbyists, with their advocacy groups, and with the senators, and they
26            say [to the government] we need disaster relief funds."

27       11.     Moreover, "[a]ccording to data from ratings firm A.M. Best Co., the insurance
28  industry as a whole has $18.4 billion in net reserves for future payouts.  But industry trade groups

---

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF          5

like the American Property Casualty Insurance Association (APCIA) say they don't have the funds to pay out the claims from a pandemic. 'Pandemic outbreaks are uninsured because they are uninsurable,' says APCIA's David A. Sampson. If insurance is forced to pay claims by legislation, for example, their reinsurers might not cover *them*." This blanket denial of business interruption insurance claims is precisely what is happening here to Plaintiffs. For the insurance industry, the goal is to generate revenues by charging high premiums for insurance while avoiding paying anything on legitimate claims by businesses like EWC Fresno.

12.     The Closure Orders **prohibited all customers from accessing** EWC Fresno's premises due to the physical presence of COVID-19 in the community and on the surfaces of the property around EWC Fresno. As a result, EWC Fresno was forced to close its doors to the public, and Plaintiffs continue to suffer substantial financial losses.

**IV.     INSURANCE DEFENDANTS AND DENIAL OF COVERAGE**

13.     In **June 2019**, Insurance Defendants entered into a contract of insurance with Plaintiffs, Spectrum Business Owner's Policy No. 21 SBA RS4714, for the period of June 8, 2019 through June 8, 2020. Under this Policy, Franklin EWC agreed to pay insurance premiums to Insurance Defendants in exchange for Insurance Defendants' promise to cover Plaintiffs for losses including, but not limited to, business income losses according to the terms set forth in the Policy. Since the inception of the Policy, Plaintiffs have paid all premiums and the Policy has at all relevant times remained in full force and effect.

14.     The Policy specifically includes (a) coverage for business interruption caused by an order of a civil authority ("**Civil Authority Coverage**"), (b) **Lost Business Income Coverage**, (c) **Extra Expense Coverage**, and (d) Limited Fungi, Bacteria, Or Virus Coverage ("**Limited Virus Coverage**").

15.     One circumstance in which the Policy's business interruption coverage can be triggered is when a complete cessation of Plaintiffs' business operations is required as the direct result of a civil authority's issuance of a Closure Order. The Civil Authority Coverage provision in the Policy provides, in pertinent part:

**Civil Authority**

**(1)** This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises."

16.    Here, coverage under the Policy's Civil Authority Coverage was triggered when a complete cessation of EWC Fresno's operations was the required and direct result of the Closure Orders issued by the State of California.

17.    These Closure Orders were issued as a direct result of a Covered Cause of Loss to property under the Policy, given that they created a direct physical loss by shutting off physical access to the insured premises by Plaintiffs and EWC Fresno's customers.

18.    These Closure Orders were also issued as a direct result of a Covered Cause of Loss to property under the Policy, seeing as the Coronavirus that was proliferating onto virtually every surface and object in, on, and around EWC Fresno and its surrounding environs was then causing, and is continuing to cause, **direct physical damage** and loss in and to the immediate area of EWC Fresno.

**V.    VIOLATIONS OF CALIFORNIA LAW**

19.    This Complaint sets forth in detail direct violations of California laws that are intended to protect insurance policyholders who act in good faith with their insurance carriers. The details below affect not only the named Plaintiffs, but also the **30 California residents** employed at EWC Fresno.

**VI.    PARTIES**

**A.    Plaintiffs**

20.    Plaintiff FRANKLIN EWC, INC. ("Franklin EWC"), is a California corporation registered in Moraga, California, within Contra Costa County. Franklin EWC owns, operates, manages, and/or controls the waxing salon known as European Wax Center – Fresno – Riverpark ("EWC Fresno") located at 7885 North Via Del Rio, Fresno, California 93720 (the "Insured

1  Premises") and that employs many people.  At all relevant times, Franklin EWC has owned, leased,

2  managed, and/or controlled the Insured Premises.

3       21.     Plaintiff **KATHY FRANKLIN** ("Ms. Franklin") is a California resident and the sole

4  owner and operator of Franklin EWC.

5      **B.**    **Insurance Company Defendants**

6       22.     Defendant **THE HARTFORD FINANCIAL SERVICES GROUP, INC.**

7  ("Hartford"), is a Delaware corporation with its principal place of business in Connecticut.  At all

8  relevant times, Hartford has been and is authorized to do business and is doing business in the state

9  of California and in Fresno County.  At all relevant times, Hartford has been and is transacting the

10  business of insurance in the state of California and in Fresno County, and the basis of this suit arises

11  out of said conduct.

12       23.     Defendant **SENTINEL INSURANCE COMPANY, LTD.** ("Sentinel"), is a State

13  corporation with its principal place of business in Connecticut.  Sentinel is an insurance company

14  that is part of Hartford.  At all relevant times, Sentinel has been authorized to do business and is

15  doing business in the state of California and in Fresno County.  At all relevant times, Sentinel has

16  been and is transacting the business of insurance in the state of California and in Fresno County, and

17  the basis of this suit arises out of said conduct.

18       24.     Upon information and belief, each of the Insurance Defendants was, at all relevant

19  times, in any agency or joint-venture relationship with the other Insurance Defendants, and was at

20  all relevant times acting within the purpose and scope of said relationship.

21      **C.**    **Doe Defendants**

22       25.     Defendants DOES 1 through 10 ("Doe Defendants") were, at all relevant times,

23  transacting or otherwise engaged in the business of insurance in the State of California and in Fresno

24  County, and the basis of this suit arises out of said conduct.  Though the true names and capacities

25  of the Doe Defendants are unknown to Plaintiffs, each of the Doe Defendants is, upon information

26  and belief, partially or wholly liable for the unlawful acts or omissions referred to herein, and for

27  the resulting harm to Plaintiffs.  Many of Insurance Defendants' agents reside and operate in Fresno

28  County.

26.     The Insurance Defendants and Doe Defendants are collectively referred to herein as Defendants.

## VII.     AIDING AND ABETTING and CO-CONSPIRATORS

27.     At all times relevant to this Complaint, each Defendant was acting as the agent, alter ego, servant, employee, and/or representative of the other Defendants, and was acting within the course and scope of their agency, employment, and/or representation, with the full knowledge, consent, permission, authorization, and ratification, either express or implied, of the other Defendants in performing the acts alleged in this Complaint.

28.     In committing the wrongful acts alleged herein, each of the Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert and/or conspired with one another in furtherance of the improper acts and transactions that are the subject of this Complaint.

29.     Each of the Insurance Defendants' agents aided and abetted and rendered substantial assistance in the wrongs complained of herein, and also acted in a knowing conspiracy to defraud Plaintiffs.   In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant, including each of the Doe Defendants, acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of their overall contribution to and furtherance of the wrongdoing.

## VIII.     JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction over this action.   The conduct giving rise to this action concerns coverage under an insurance policy taken out by a business with its headquarters in Contra Costa County, California. This action is based, in substantial part, on the breach of an insurance contract concerning a California property and business and is based on violations of California law.   The amount in controversy exceeds the minimum jurisdictional amount of unlimited civil cases.

31.     Venue is proper because the conduct giving rise to this action concerns a denial of coverage under an insurance policy taken out by a business with its headquarters in Contra Costa County, California, by the Defendants and their agents and co-conspirators.

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF          9

## IX.     FACTUAL BACKGROUND

### A.     EWC Fresno

32.     European Wax Center – Fresno – Riverpark is a wildly successful and award-winning waxing salon located off California State Route 41 in Fresno. The salon offers a range of face and body hair removal and skincare services to its male and female clientele and strives to provide them "unbelievably smooth skin with a side of confidence." Owner Katherine Franklin opened her first salon in 2011 and the Fresno location in 2013 and has built it into a highly successful, locally owned and operated business.

### B.     Pandemic in California

33.     COVID-19 is a deadly infectious disease caused by the recently discovered Coronavirus known as SARS-CoV-2. It first emerged in or about December 2019. Because this Coronavirus is highly transmissible, it has been and is rapidly spreading throughout the world, including throughout California.

34.     According to the World Health Organization ("WHO"): "People can catch COVID-19 from others who have the virus. The disease can spread from person to person through small droplets from the nose or mouth which are spread when a person with COVID-19 coughs or exhales. These droplets land on objects and surfaces around the person. Other people then catch COVID-19 by touching these objects or surfaces, then touching their eyes, nose or mouth. People can also catch COVID-19 if they breathe in droplets from a person with COVID-19 who coughs out or exhales droplets."[1] Because the Coronavirus that causes COVID-19 is contained in and transmitted by droplets that land indiscriminately on the surfaces of property with potentially fatal consequences, it unquestionably causes physical damage and loss.

35.     According to the U.S. Centers for Disease Control and Prevention ("CDC"): "COVID-19 seems to be spreading easily and sustainably in the community ('community spread') in many affected geographic areas" in the United States.[2]

---

[1] WHO website, *Q&A on coronaviruses (COVID-19)*, "How does COVID-19 spread?," https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last visited Apr. 15, 2020).
[2] CDC website, *Coronavirus Disease 2019 (COVID-19): Frequently Asked Questions*, "How COVID-19 Spreads: How does the virus spread?," https://www.cdc.gov/coronavirus/2019-ncov/faq.html#covid19-basics (last visited Apr. 28, 2020).

**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**     10

36.     On **January 26, 2020**, the CDC announced California's first positive test result for COVID-19.

**C.     Closure Orders Issued by State and County Civil Authorities**

37.     On **March 4, 2020**, California Governor Gavin Newsom issued a Proclamation of a State of Emergency with respect to the COVID-19 pandemic. Among other things, the Proclamation finds that there were, as of that date, and despite the widespread unavailability of COVID-19 testing, already 53 confirmed cases of COVID-19 in California, and more than 9,400 Californians across 49 counties in home monitoring because of possible travel-based exposure to the Coronavirus.

38.     On **March 11, 2020**, the WHO declared the outbreak a global pandemic.

39.     On **March 12, 2020**, Governor Newsom issued Executive Order N-25-20 ("**March 12 Executive Order**"), ordering that: "All residents are to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19" (¶ 1). This Order took effect on March 12, 2020, and has remained continuously in effect through the date of this Complaint.

40.     On **March 19, 2020**, the State of California issued an Order of the State Public Health Officer, which set baseline statewide restrictions on non-essential business activities effective until further notice. On that same date, Governor Newsom issued Executive Order N-33-20, expressly requiring California residents to follow the March 19 Order of the State Public Health Officer, and incorporating by reference California Government Code 8665, which provides that "[a]ny person . . . who refuses or willfully neglects to obey any lawful order . . . issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment" (Cal. Gov. Code § 8665). The March 19 Order of the State Public Health Officer and Executive Order N-33-20 (collectively, the "**Statewide Shelter Orders**") took immediate effect on March 19, 2020, and both have remained continuously in effect through the date of this Complaint.

///

**D.  EWC Fresno Forced to Close and Resulting Financial Losses**

41.  On **March 19, 2020,** EWC Fresno was forced to close its doors to the public and let 30 workers go. The March 19 Statewide Shelter Orders required EWC Fresno to close (the "Closure Order").

42.  Similarly, the Closure Order created direct physical loss by prohibiting customers accessing and otherwise patronizing EWC Fresno for purposes of obtaining waxing salon services.

43.  Further, even if the Closure Orders had not issued, EWC Fresno would have had to close the salon and suspend its operations due to the worsening pandemic-level presence or risk of presence of the Coronavirus in, on, and around the Insured Premises, and which has caused physical damage or loss to the Insured Premises and to the fixtures and personal property therein. Moreover, the pandemic-level presence or risk of presence of the Coronavirus in those places where its employees, suppliers, and regular and potential clientele live, work, recreate, and travel means that EWC Fresno could not have reopened during this ongoing closure period due to the high statistical likelihood, if not certainty, that the Insured Premises would have been regularly re-damaged by the recurrent reintroduction of infectious Coronavirus into the Insured Premises from COVID-19-infected individuals and personal property.

44.  Due to the Closure Orders, as well as the presence of the Coronavirus in, on, and around the Insured Premises, Plaintiffs have suffered and continue to suffer substantial lost business income and other financial losses.

**E.  EWC Fresno Suffers Covered Loss**

45.  These extraordinary losses of business income are precisely why Plaintiffs took out the business interruption Policy with Insurance Defendants, and their losses are covered under the Policy. Specifically, Plaintiffs losses are covered under the Policy's Civil Authority Coverage, Lost Business Income Coverage, Extra Expense Coverage, and Limited Virus Coverage.

46.  EWC Fresno is located in built urban environment in Fresno, California. Its neighbors are a mix of offices, restaurants, retail shops, and other businesses.

47.  According to the CDC, the National Institutes of Health ("NIH"), other infectious disease organizations around the world, and leading peer-reviewed medical journals such as the New

---

England Journal of Medicine, the Coronavirus spreads by droplets through person-to-person contact and through contact with surfaces and objects.[3]  Although droplets containing Coronavirus may not be visible to the human eye, the droplets are undeniably physical and have spread on property surfaces.

48.     The insidious nature of the Coronavirus is that it can remain infectious on a variety of surfaces and objects from a few hours to several days.  The CDC reports that the Coronavirus was detected on various surfaces inside the cruise ship cabins of both symptomatic and asymptomatic passengers **17 days** after the cabins had been vacated.[4]  The Coronavirus can remain on stainless steel and plastic up to 6 days; on glass, ceramics, silicon rubber, or paper up to 5 days; on paper currency up to 3 days; and on cardboard up to 24 hours.[5]

49.     Droplets containing Coronavirus can also travel and remain infectious while suspended in the air.  A widely reported study from the Massachusetts Institute of Technology found that the droplets from a cough can travel as far as 16 feet, and droplets from a sneeze can travel as far as 26 feet.[6]  According to a recent report in the New York Times: "An infected person talking five minutes in a poorly ventilated space can produce as many viral droplets as one infectious cough.  'If there are 10 people in there, it's going to be a build up,' said Pratim Biswas, an aerosols experts at Washington University in St. Louis."[7]

---

[3] *See, e.g.*, CDC website, "How COVID-19 Spreads," https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited Apr. 28, 2020).
[4] *See* Leah E. Moriary, et al., "Public Health Responses to COVID-19 Outbreaks on Cruise Ships — Worldwide, February–March 2020," 69 *Morbidity and Mortality Weekly Report* 347 (released online Mar. 23, 2020), *available at* https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6912e3-H.pdf (last visited Apr. 28, 2020) (CDC journal article).
[5] *See* Alex W.H. Chin, et al., "Stability of SARS-CoV-2 in different environmental conditions," *The Lancet Microbe* (Apr. 2, 2020), *available at* https://doi.org/10.1016/S2666-5247(20)30003-3 (last visited Apr. 28, 2020); Neeltje van Doremalen, et al., "Aerosol and Surface Stability of SARS-CoV-2 as Compared to SARS-CoV-1," *New England Journal of Medicine* (Mar. 17, 2020), *available at* https://www.nejm.org/doi/pdf/10.1056/NEJMc2004973 (last visited Apr. 28, 2020); Guenter Kampf, et al., "Persistence of coronaviruses on inanimate surfaces and their inactivation with biocidal agents," 104 *Journal of Hospital Infection* 246 (Feb. 6, 2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7132493/pdf/main.pdf (last visited Apr. 28, 2020).
[6] *See* Lydia Bouroulba, "Turbulent Gas Clous and Respiratory Pathogen Emissions: Potential Implications for Reducing Transmission of COVID-19," *JAMA* (published online Mar. 26, 2020), *available at* https://jamanetwork.com/journals/jama/fullarticle/2763852 (last visited Apr. 28, 2020).
[7] *See* Yuliya Pashina-Kottas, et al., "This 3-D Simulation Shows Why Social Distancing Is So Important, *The New York Times* (Apr. 14, 2020), https://www.nytimes.com/interactive/2020/04/14

50.     As noted above, the Civil Authority provision of the Policy makes clear that "[t]his insurance is extended to apply to the actual loss of Business Income you [i.e., EWC Fresno] sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'" Policy, Special Property Coverage Form § A.5.q.  This coverage applies here."

51.     Here, Plaintiffs' losses are covered by the Civil Authority Coverage due to the Closure Order, which not only restricted the movement of people; rather, it also directly required that EWC Fresno close its doors, and therefore had the impact of taking away the use of the insured premises for their intended purpose.

52.     Moreover, the Closure Order was issued due to droplets containing the Coronavirus being on surfaces and objects in, on, around and in the immediate area of EWC Fresno.  These infected surfaces and objects outside of EWC Fresno include all the common fixtures, installations, and other kinds of property that exist in California's contemporary built environment (e.g., building façades, windows, walls, doorknobs, door handles and push plates, sidewalks, light posts, benches, parking meters, trash receptacles and bags, litter, bicycles and bicycle racks, automobiles, other fixtures and property, and passersby that occupy and line the street outside, and the immediate area surrounding, EWC Fresno.

53.     The Policy's Lost Business Income Coverage expressly provides coverage to pay for lost business income, regardless of whether the loss was the result of a civil authority order.  The Policy states, in relevant part:

    **o. Business Income**

        **(1)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration".  The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000

/science/coronavirus-transmission-cough-6-feet-ar-ul.html (last visited Apr. 15, 2020) (3-D visualization with commentary).

1   feet of the "scheduled premises", caused by or resulting from a

2   Covered Cause of Loss.

3   * * *

4   **(4)** Business Income means the:

5   **(a)** Net Income (Net Profit or Loss before income taxes) that would

6   have been earned or incurred if no direct physical loss or

7   physical damage had occurred; and

8   **(b)** Continuing normal operating expenses incurred, including

9   payroll.

10   **(5)** With respect to the coverage provided in this Additional Coverage,

11   suspension means:

12   **(a)** The partial slowdown or complete cessation of your business

13   activities . . . .

14   Policy, Special Coverage Property Form § A.5.o. This coverage also applies here.

15   54.   Here, Plaintiffs' losses are covered by the Lost Business Income Coverage due to the

16   physical loss of the cutting off of physical access to the Insured Premises. In addition these losses

17   are covered because of the presence and physical damage that the Coronavirus caused to the Insured

18   Premises itself, where every surface and object is implicated, including the doors and their parts,

19   door jambs, handrails, floors and carpeting, walls, countertops, tables, chairs and other seating, light

20   fixtures, bathrooms, and other fixtures and moveable personal property.

21   55.   The presence or imminent threat of the presence of the Coronavirus and the

22   consequent closures also constituted physical damage in the sense that they eliminated or destroyed

23   the function of EWC Fresno's premises, making the location useless or uninhabitable.

24   **F.   Insurance Defendants' Denial of Plaintiffs' Claim**

25   56.   On or shortly after **March 19, 2020**, Plaintiffs filed a claim with Insurance

26   Defendants requesting coverage under the Policy for Plaintiffs' lost Business Income due to the

27   Closure Orders and the damage caused by the presence of the Coronavirus in and around the Insured

28   Premises.

---

**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**     15

57.     On **April 8, 2020,** Hartford issued written correspondence to Plaintiffs stating that it was denying the claim, and they did so without having conducted any inspection or review of the Insured Premises.

58.     On information and belief, Insurance Defendants accepted the Policy premiums paid by Plaintiffs with no intention of providing any coverage under the applicable coverages for losses from closure orders issued by civil authorities and from an epidemic or pandemic.

59.     On information and belief, Insurance Defendants rejected Plaintiffs' claims in bad faith as part of a policy to limit its losses during this pandemic, notwithstanding that the Policy provides coverage for Plaintiffs' losses.

**X.      CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

60.     Plaintiffs re-allege and incorporate by reference into this cause of action all allegations set forth in this Complaint.

61.     At all times relevant, Plaintiffs have paid all premiums and fulfilled or performed all their obligations under the Policy.

62.     Insurance Defendants had contractual duties to provide Plaintiffs with insurance coverage under the applicable Policy coverages, including those coverages specifically alleged herein.

63.     In denying Plaintiffs' insurance claim, and otherwise refusing to perform under the Policy, Insurance Defendants breached those duties.

64.     As a result of those breaches, Plaintiffs have been damaged in the amount of coverage to which they are entitled under the Policy, and in an amount to be proved at trial, and for which Plaintiffs seek compensatory, general, and other monetary damages (including all foreseeable consequential and incidental damages for diminution in value, loss of use, and other incidental damages and out-of-pocket expenses) in an amount to be determined at trial, plus interest.

## SECOND CAUSE OF ACTION

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

65.     Plaintiffs re-allege and incorporate by reference into this cause of action all allegations set forth in this Complaint.

66.     When Insurance Defendants issued the Policy, they undertook and were bound to the covenants implied by law that they would deal fairly and in good faith with Plaintiffs, and not engage in any acts, conduct, or omissions that would impair or diminish the rights and benefits due Plaintiffs, according to the terms of the Policy.

67.     Upon information and belief, Insurance Defendants breached the implied covenant of good faith and fair dealing arising out of the Policy by, unreasonably and in bad faith, denying Plaintiffs insurance coverage to which they are entitled under the Policy. Specifically, among other conduct, Defendants (a) failed or refused to perform a fair, objective, and thorough investigation of the claim as required by the California Insurance Code; (b) asserted coverage defenses that were legally and/or factually invalid and thereby delaying resolution of Plaintiffs' claim; (c) placed unduly restrictive interpretations on the Policy terms for the purpose of denying coverage due under the Policy; (d) failed to give Plaintiffs' interests equal consideration with its own; and (e) forced Plaintiffs to institute litigation to recover amounts due under the Policy.

68.     In committing the above-referenced breaches, Insurance Defendants intended to and did vex, damage, annoy, and injure Plaintiffs. Said conduct was intentional, willful, and with conscious disregard of Plaintiffs' rights, and was malicious, oppressive and/or fraudulent under California Civil Code section 3294, thereby entitling Plaintiffs to punitive and exemplary damages against each of the Insurance Defendants.

69.     As a direct and proximate result of the above-referenced breach, Plaintiffs have had to retain attorneys to enforce their right to the insurance coverage to which they are entitled under the Policy, and have thereby been injured and damaged.

70.     Plaintiffs, therefore, are entitled to recover and seek in connection with this Cause of Action (a) compensatory, general, and other monetary damages (including all foreseeable consequential and incidental damages for diminution in value, loss of use, and other incidental

damages and out-of-pocket expenses) in an amount to be determined at trial, plus interest; (b) punitive and exemplary damages in an amount to be determined at trial; (c) Plaintiffs' costs of suit; and (d) Plaintiffs' reasonable attorney's fees in connection with this action.

**THIRD CAUSE OF ACTION**

**BAD FAITH DENIAL OF INSURANCE CLAIM**

71.     Plaintiffs re-allege and incorporate by reference into this cause of action all allegations set forth in this Complaint.

72.     Defendants have put their own interests above those of Plaintiffs and have, in bad faith, failed or refused to perform their obligations under the Policy and under the laws of California.

73.     Defendants denied Plaintiffs' claim in bad faith by, among other conduct, (a) failing or refusing to perform a fair, objective, and thorough investigation of the claim as required by the California Insurance Code; (b) asserting coverage defenses that were legally and/or factually invalid and thereby delaying resolution of Plaintiffs' claim; (c) placing unduly restrictive interpretations on the Policy terms for the purpose of denying coverage due under the Policy; (d) failing to give Plaintiffs' interests equal consideration with its own; and (e) forcing Plaintiffs to institute litigation to recover amounts due under the Policy.

74.     Upon information and belief, there are numerous other individuals and groups insured by Defendants who were or are similarly situated to Plaintiffs and who are also being denied benefits under the same unlawful and non-applicable policy provisions and/or exclusions being applied to Plaintiffs.  At such time as Plaintiffs learn the names of such persons, Plaintiffs may seek leave of court to join such persons as plaintiffs in this action.

75.     Based on the above, Plaintiffs allege that Defendants have committed institutional bad faith that is part of a repeated pattern of unfair practices and not an isolated occurrence.  The pattern of unfair practices constitutes a conscious course of wrongful conduct that is firmly grounded in Defendants' established company policy.

76.     As a proximate result of the aforementioned bad faith conduct by Defendants, Plaintiffs have suffered and will continue to suffer damages.  These damages include interest on the

1  withheld and unreasonably delayed payments due under the Policy and other special economic and

2  consequential damages, of a total amount to be shown at trial.

3     77.     As a further proximate result Defendants' bad faith conduct, Plaintiffs were

4  compelled to retain legal counsel to obtain the coverage benefits due under the Policy.  Therefore,

5  Defendants are liable to Plaintiffs for those attorney fees, witness fees, and costs of litigation

6  reasonably necessary and incurred by Plaintiffs in order to obtain the benefits of the Policy.

7     78.     Defendants carried out their bad-faith conduct with a willful and conscious disregard

8  of Plaintiffs' rights or subjected Plaintiffs to cruel and unjust hardship in conscious disregard of its

9  rights.  Alternatively, Defendants' conduct constituted an intentional misrepresentation, deceit, or

10  concealment of a material fact known to Defendants with the intention of depriving Plaintiffs of

11  property or legal rights, or of causing Plaintiffs other injury. Defendants' conduct constitutes malice,

12  oppression, or fraud under California Civil Code section 3294, entitling Plaintiffs to punitive

13  damages in an amount appropriate to punish or set an example of Defendants and to deter future

14  similar conduct.

15                      **FOURTH CAUSE OF ACTION**

16  **UNFAIR BUSINESS PRACTICES UNDER BUS. & PROF. CODE § 17200, ET SEQ.**

17     79.     Plaintiffs re-allege and incorporate by reference into this cause of action all

18  allegations set forth in this Complaint as though fully set forth herein.

19     80.     California's Unfair Competition Law, as codified by California Business &

20  Professions Code sections 17200, *et seq.*, protects both consumers and competitors by promoting

21  fair competition in commercial markets for goods and services.  California's Unfair Competition

22  Law is interpreted broadly and provides a cause of action for any unlawful, unfair, or fraudulent

23  business act or practice.  Any unlawful, unfair, or fraudulent business practice that causes injury to

24  consumers falls within the scope of California's Unfair Competition Law.

25     81.     Defendants' acts and practices, as described herein, constitute unlawful or unfair

26  business practices against Plaintiffs in violation of California Business and Professions Code section

27  17200, *et seq.*

28

---

**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**          19

82.     These unlawful or unfair acts and practices include, but are not limited to, (a) failing or refusing to perform a fair, objective, and thorough investigation of the claim as required by the California Insurance Code; (b) asserting coverage defenses that were legally and/or factually invalid and thereby delaying resolution of Plaintiffs' claim; (c) placing unduly restrictive interpretations on the Policy terms for the purpose of denying coverage due under the Policy; (d) failing to give Plaintiffs' interests equal consideration with its own; (e) forcing Plaintiffs to institute litigation to recover amounts due under the Policy; (f) charging and accepting Plaintiffs' premiums in exchange for coverage or purported coverage for losses caused by an order of a civil authority, by direct physical damage to the Insured Premises, by a virus, and by other business interruptions, without any intention of satisfying those claims in an emergency such as the COVID-19 pandemic and the related Closure Orders; and (g) denying Plaintiffs' claims as part of a company-wide and/or industry-wide policy of denying all business interruption claims related to the COVID-19 pandemic.

83.     These unlawful or unfair acts and practices also include, but are not limited to, inserting deep into the fine print of the Policy's Limited Virus Coverage an absurd coverage requirement that is factually impossible to satisfy, then offering that Limited Virus Coverage to Plaintiffs and otherwise inducing Plaintiffs to purchase it, charging and accepting premiums for the Limited Virus Coverage, representing in the Policy Declarations that Plaintiff has Limited Virus Coverage, and then when Plaintiff makes a claim, denying that claim (in part) because of Plaintiffs' failure to satisfy the impossible coverage requirement. The impossible coverage requirement is that the virus that causes damage to the insured must "[be] the result of one of more of the following causes . . . (1) A "specified cause of loss" [which the Policy elsewhere defines as "Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage"] other than fire or lightning . . . [or] (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property . . . ." (Policy, Limited Fungi, Bacteria or Virus Coverage Form § B.1.a.). But as a matter of scientific fact, viruses cannot be "the result of" explosion, windstorm or hail, smoke, aircraft or vehicles, falling objects, or any of the other "specified cause of loss," or of an "Equipment Breakdown Accident," as those terms are

defined by the Policy.

84.     Any claimed justification for Defendants' conduct is outweighed by the gravity of the consequences to Plaintiffs.  Defendants' acts and practices are immoral, unethical, oppressive, unconscionable, or substantially injurious to Plaintiffs, and/or have a tendency to deceive Plaintiffs.

85.     By reason of Defendants' fraudulent, deceptive, unfair, and other wrongful conduct as alleged herein, said Defendants violated California Business and Professions Code sections 17200, *et seq.*, by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of the benefits of Defendants' financial products and services.

86.     Defendants perpetrated these acts and practices against Plaintiffs, and as a direct and proximate result of the foregoing, Plaintiffs have suffered and continue to suffer damages in a sum which is, as of yet, unascertained.  Pursuant to California Business and Professions Code section 17203, Plaintiffs are entitled to and seek restitution of all the monies paid to Defendants for retaining benefits that were due and owing to Plaintiffs (with interest thereon), disgorgement of all Defendants' profits arising out of their unlawful conduct (with interest thereon), payment of all benefits due to Plaintiffs under the Policy that Defendants wrongfully retained by means of its unlawful business practices, and/or to injunctive relief to enjoin Defendants unfair business practices in the future.

87.     With respect to injunctive relief, Defendants wrongfully denied Plaintiffs' insurance claim based on erroneous interpretations of the Policy, in order to avoid their financial obligations to Plaintiffs thereunder.  Given the likely extended time period of the regional presence of the Coronavirus and COVID-19 cases, and the likely continued effect of the Closure Orders, Plaintiffs will almost certainly have similar insurance claims in the future, and Defendants will almost certainly apply the same or similar erroneous interpretations of the Policy to wrongfully deny coverage. If Defendants' conduct in this manner is not restrained and enjoined, Plaintiffs will suffer great and irreparable harm, and Defendants seem committed to continuing their unfair and unlawful business practices of erroneously denying Plaintiffs' claims.  Defendants will continue to act in their own self-interest and to commit the acts that have damaged Plaintiffs, and that continue to do so.

88.     Pursuant to California Code of Civil Procedure section 1021.5, Plaintiffs are entitled to recover and seek their reasonable attorney's fees in connection with Defendants' unfair competition claims, the substantial benefit doctrine, and/or the common fund doctrine.

## FIFTH CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

89.     Plaintiffs re-allege and incorporate by reference into this cause of action all allegations set forth in this Complaint.

90.     Defendants committed actionable fraud against Plaintiffs by way of affirmative misrepresentations and the concealment of material facts.  For example, Defendants affirmatively misrepresented that there was full coverage for business interruption whenever there was a business interruption caused by physical damage.  At all relevant times, Defendants knew and concealed from the Plaintiffs that there was a policy that Defendants would not pay any claims during a pandemic, notwithstanding the express provision for such coverage in the Policy.

91.     Defendants made or approved materially false and misleading statements to Plaintiffs when it sold Plaintiffs the Policy.

92.     Defendants made the foregoing false statements and misrepresentations that omitted and concealed material facts despite being aware of their falsity.

93.     Plaintiffs reasonably and actually relied on Defendants' misrepresentations and concealments.

94.     As a direct and proximate result of such unlawful conduct, Plaintiffs have suffered, and will continue to suffer, damages in an amount to be proven at trial.

95.     Defendants' acts were undertaken intentionally and in conscious disregard of Plaintiffs' rights, and were malicious, fraudulent, and oppressive.

96.     Plaintiffs are entitled to damages, and they should be awarded exemplary and punitive damages in an appropriate amount to punish Defendants and to deter similar fraudulent conduct in the future.

## SIXTH CAUSE OF ACTION

## CONSTRUCTIVE FRAUD

97.   Plaintiffs re-allege and incorporate by reference into this cause of action all allegations set forth in this Complaint.

98.   Defendants owe fiduciary and quasi-fiduciary duties to Plaintiffs, including duties of loyalty, due care, good faith, and fair dealing in connection with their actions under the Policy.

99.   By the conduct alleged herein, Defendants took unfair advantage of and did not act in or consider the best interests of Plaintiffs, but rather acted solely in their own interests.

100.   As a direct and proximate result of Defendants' constructive fraud, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

101.   Defendants' acts were also malicious, fraudulent, and oppressive, and undertaken intentionally and in conscious disregard of Plaintiffs' rights.

102.   Plaintiffs are entitled to damages, and should be awarded exemplary and punitive damages in an appropriate amount to punish Defendants and to deter similar fraudulent conduct in the future.

## SEVENTH CAUSE OF ACTION

## UNJUST ENRICHMENT

103.   Plaintiffs re-allege and incorporate by reference into this cause of action all allegations set forth in this Complaint.

104.   As a result of Defendants' conduct, as set forth above, Plaintiffs may lose the financial benefit of the amounts that Plaintiffs paid for those portions of the Policy that were illegal, unfair, or deceptive.

105.   By their wrongful acts and omissions, Defendants, and each of them, were unjustly enriched at the expense of and to the detriment of Plaintiffs.

106.   Defendants were unjustly enriched, among other reasons, by offering, and accepting premiums paid for, insurance coverages within the Policy that purport and appear at first glance to provide certain coverages, such as the Limited Virus Coverage, but when read according their plain meaning, lead to absurd requirements that are impossible to satisfy, such as only covering losses

1  caused by viruses that were the result of windstorms, hail, aircraft, falling objects, and other

2  phenomena and events that are incapable of creating or otherwise resulting in a virus.

3      107.    To enforce such coverage requirements would be unconscionable, void as against

4  public policy, and inequitable.  In the event such coverage requirements are interpreted and applied

5  according to their plain meaning (they should not be), it would be against equity to permit

6  Defendants to retain the payments that they received from Plaintiffs for any such aspect of the Policy.

7  This is because it is an illegal, deceptive, unfair, and/or fraudulent business practice to induce

8  Plaintiffs or any other person to purchase insurance coverage that will never cover a loss.

9      108.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been

10  damaged and are entitled to restitution in an amount to be determined at trial.  Plaintiffs seek

11  restitution from Defendants and seek an order from this Court disgorging all monies paid to

12  Defendants as a result of the illegal, deceptive, unfair, and/or fraudulent business practices.

13      109.    Plaintiffs have no adequate remedy at law.

14  **EIGHTH CAUSE OF ACTION**

15  **DECLARATORY RELIEF**

16      110.    Plaintiffs re-allege and incorporate by reference into this cause of action all

17  allegations set forth in this Complaint.

18      111.    Under California Code of Civil Procedure section 1060, *et seq.*, the court may declare

19  rights, duties, statuses, and other legal relations, regardless of whether further relief is or could be

20  claimed.

21      112.    An actual controversy has arisen between Plaintiffs and Defendants as to their

22  respective rights and duties under the Policy.

23      113.    Resolution of the parties' respective rights and duties under the Policy by declaration

24  of the Court is necessary, as there exists no adequate remedy at law.

25      114.    Plaintiffs allege and contend, with respect to the Policy's Civil Authority Coverage,

26  that each of the Closure Orders triggers that coverage because (a) each of the Closure Orders is an

27  order of a civil authority, (b) each of the Closure Orders specifically prohibits access to the Insured

28  Premises by prohibiting all potential on-premises dining customers and workers from accessing the

Insured Premises, (c) said prohibition of access by each of the Closure Orders has been continuous and ongoing since the Orders were issued, such that access has not subsequently been permitted, (d) each of the Closure Orders prohibits said access as the direct result of a Covered Cause of Loss in the immediate area of the Insured Premises, (e) no Policy coverage exclusions or limitations apply to exclude or limit coverage, (f) Plaintiffs have suffered actual and covered loss of Business Income in an amount to be determined at trial, and (g) coverage under the Policy should begin as of March 19, 2020.

115.    Plaintiffs allege and contend that the Policy's Lost Business Income Coverage is triggered because (a) Plaintiffs have sustained actual loss of Business Income due to the closure of EWC Fresno, (b) said closure constitutes a necessary suspension of EWC Fresno's operations under the Policy, (c) this suspension has been and is caused by direct physical loss of or physical damage to property at the Insured Premises, including personal property in the open (or in a vehicle) within 1,000 feet of the Scheduled Premises, due to the presence of Coronavirus, (d) the presence of Coronavirus is a Covered Cause of Loss, and (e) some or all of the period of EWC Fresno's closure is within the period of restoration under the Policy.

116.    Plaintiffs allege and contend that the Policy's Extra Expense Coverage is triggered because (a) Plaintiffs have incurred Extra Expense due to the closure of EWC Fresno, (b) said closure constitutes a necessary suspension of EWC Fresno's operations under the Policy, (c) this suspension has been and is caused by direct physical loss of or physical damage to property at the Scheduled Premises, including personal property in the open (or in a vehicle) within 1,000 feet of the Scheduled Premises, due to the presence of Coronavirus, (d) the presence of Coronavirus is a Covered Cause of Loss, and (e) some or all of the Extra Expense was incurred during the period of restoration under the Policy.

117.    Plaintiffs allege and contend that the presence of the Coronavirus in and on the Insured Premises triggers the Policy's Limited Virus Coverage because (a) the "specified cause of loss" and "Equipment Breakdown Accident" coverage requirement is unconscionable, void as against public policy, inequitable, or otherwise unenforceable for the reasons alleged herein, (b) the loss and the cause of loss arose during the policy period, and (c) all reasonable means were used to

1   save and preserve the property from further damage. Further, (d) the Limited Virus Coverage

2   provides up to $50,000 in coverage for 30 days lost business income (per the declarations), as well

3   as direct physical loss or damage and the costing of testing for virus in the Scheduled Premises.

4         118.   Plaintiffs allege and contend that Defendants wrongly denied coverage with respect

5   to all the foregoing provisions.

6         119.   Upon information and belief, Plaintiffs allege that Defendants dispute and deny each

7   of Plaintiffs' contentions set forth in this Cause of Action.

8         120.   Plaintiffs, therefore, seek a declaratory judgment regarding each of Plaintiffs'

9   contentions set forth in this Cause of Action.  A declaratory judgment determining that Plaintiffs are

10  due coverage under the Policy, as set forth above, will help to ensure the survival of its business

11  during this prolonged closure made necessary by the Closure Orders and by the presence of

12  Coronavirus at and around the Insured Premises during this global pandemic.

13  **NINTH CAUSE OF ACTION**

14  **EQUITABLE INJUNCTIVE RELIEF**

15        121.   Plaintiffs re-allege and incorporate by reference into this cause of action all

16  allegations set forth in this Complaint.

17        122.   Upon information and belief, Plaintiffs allege that, unless enjoined by order of the

18  Court, Defendants will continue to operate their companies for their sole benefit and to the detriment

19  of Plaintiffs.

20        123.   No adequate remedy exists at law for the injuries alleged herein, and Plaintiffs will

21  suffer great and irreparable injury if Defendants' conduct is not immediately enjoined and restrained.

22  **XI.   PRAYER FOR RELIEF**

23        WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants, as

24  follows:

25        A.   For a declaration adopting each of Plaintiffs' contentions set forth in the above Cause

26            of Action for Declaratory Relief;

27

28

B.    For injunctive relief enjoining and restraining Defendants' unlawful conduct as alleged herein, including but not limited to their unfair and unlawful business practices and their wrongful denials of coverage under the Policy;

C.    For compensatory, general, and other monetary damages (including all foreseeable consequential and incidental damages for diminution in value, loss of use, and other incidental damages and out-of-pocket expenses) in an amount to be determined at trial;

D.    For exemplary and punitive damages in an amount to be determined at trial;

E.    For Plaintiffs' costs of suit;

F.    For Plaintiffs' reasonable attorney's fees incurred in this action pursuant to statute;

G.    For pre-judgment interest and all other interest to which Plaintiffs are entitled; and

H.    For such other relief as the Court may deem proper.

Dated: May 20, 2020                    COTCHETT, PITRE, & McCARTHY, LLP

                                       By: _____
                                           NANCI E. NISHIMURA
                                           *Counsel for Plaintiffs*


## DEMAND FOR JURY TRIAL

Plaintiffs FRANKLIN EWC, INC., and KATHY FRANKLIN hereby demand a jury trial on all issues so triable.

Dated: May 20, 2020                    COTCHETT, PITRE, & McCARTHY, LLP

                                       By: _____
                                           NANCI E. NISHIMURA
                                           *Counsel for Plaintiffs*

SUPERIOR COURT - MARTINEZ
COUNTY OF CONTRA COSTA
MARTINEZ, CA, 94553

FRANKLIN EWC, INC VS THE HARTFORD FINANCIAL SERVIC

NOTICE OF CASE MANAGEMENT CONFERENCE                CIVMSC20-00888

1.    NOTICE: THE CASE MANAGEMENT CONFERENCE HAS BEEN SCHEDULED FOR:

DATE: 10/07/20        DEPT: 33        TIME: 8:30

THIS FORM, A COPY OF THE NOTICE TO PLAINTIFFS, THE ADR INFORMATION
SHEET, A BLANK CASE MANAGEMENT CONFERENCE QUESTIONNAIRE, AND A BLANK
STIPULATION FORM ARE TO BE SERVED ON OPPOSING PARTIES.  ALL PARTIES
SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT OR THEIR ATTORNEY
OF RECORD MUST APPEAR.

2.   You may stipulate to an earlier Case Management Conference.  If
all parties agree to an early Case Management Conference, please
contact the Court Clerk's Office at (925)608-1000 for Unlimited Civil
and Limited Civil cases for assignment of an earlier date.

3.   You must be familiar with the case and be fully prepared to par-
ticipate effectively in the Case Management Conference and to discuss
the suitability of this case for the EASE Program, private mediation,
binding or non-binding arbitration, and/or use of a Special Master.

4.   At any Case Management Conference the court may make pretrial
orders including the following:

    a.   an order establishing a discovery schedule
    b.   an order referring the case to arbitration
    c.   an order transferring the case to limited jurisdiction
    d.   an order dismissing fictitious defendants
    e.   an order scheduling exchange of expert witness information
    f.   an order setting subsequent conference and the trial date
    g.   an order consolidating cases
    h.   an order severing trial of cross-complaints or bifurcating
         issues
    i.   an order determining when demurrers and motions will be filed

                         SANCTIONS
If you do not file the Case Management Conference Questionnaire or
attend the Case Management Conference or participate effectively in
the Conference, the court may impose sanctions (including dismissal of
the case and payment of money).

          Clerk of the Superior Court of Contra Costa County
I declare under penalty of perjury that I am not a party to this
action, and that I delivered or mailed a copy of this notice to the
person representing the plaintiff/cross-complainant.

Dated:  05/21/20

                              _____
                              BROOKE POOL
                              Deputy Clerk of the Court



## CONTRA COSTA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

All judges in the Civil Trial Delay Reduction Program agree that parties should consider using Alternative Dispute Resolution (ADR) to settle their cases. To tell the court you will use ADR:

- Choose ADR on the *Case Management Form* (CM-110);
- File a *Stipulation and Order to Attend ADR and Continue First Case Management Conference 90-Days* (local court form); or
- Agree to ADR at your first court appearance.

*Questions?* Email *adrweb@contracosta.courts.ca.gov* or call (925) 608-2075

## MEDIATION

Mediation is often faster and less expensive than going to trial. Mediators help people who have a dispute talk about ways they can settle their case. Parties email, fax or visit the ADR Programs office to get a list of mediators. After parties have agreed on a mediator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the mediator at least 5 court days before mediation starts.

ALL parties and attorneys must go to mediation. Mediation can be held whenever and wherever the parties and the mediator want, as long as they finish before the court deadline. In some kinds of court cases, parties have the chance to mediate in the courthouse on their trial day.

Most mediators begin by talking with the parties together, helping them focus on the important issues. The mediator may also meet with each party alone. Mediators often ask parties for their ideas about how to settle the case. Some mediators tell the parties how much money they think a case is worth, or tell them what they think might happen if the case went to trial. Other mediators help the parties decide these things for themselves. No matter what approach a mediator takes, decisions about settling a case can only be made when all the parties agree.

If the parties go through the court ADR program, mediators do not charge fees for the first half hour spent scheduling or preparing for mediation. They also do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediators regular fees. Some mediators ask for a deposit before mediation starts. Mediators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the mediation. A party whose court fees have been waived (cancelled) may ask if their mediation fees or deposit can be waived.

If parties agree about how they will settle their case, they can choose to keep it private, write it up as a contract, or ask the judge to make it a court order. What parties say and agree to in mediation is confidential (private).

## PRIVATE MEDIATION

Private mediation works in the same way as judicial mediation, but the parties do not go through the ADR Programs office. Parties choose a mediator on their own, and pay the mediator's normal fees.

## JUDICIAL ARBITRATION (non-binding)

In judicial arbitration, an independent attorney (arbitrator) looks at the evidence, listens to the parties and their witnesses, and decides how the case will be settled. Judicial arbitration is less formal than court. Parties email, fax or visit the ADR Programs office to get a list of arbitrators. If they cannot agree on an arbitrator, the court will assign one. The judge can send cases to arbitration if there is less than $50,000 in dispute. The person who started the court case can make sure the case goes to arbitration if they agree to limit the amount they are asking for to $50,000. Parties can also agree they want to use judicial arbitration. The arbitrator must send their decision (award) to the court within 10 days of the last hearing. The award becomes a court judgment unless a party asks the court to review the case within 60 days. Parties must use the ADR-102 form to ask for a new court hearing (called a trial de novo.) Judicial arbitrators charge $150 per case or per day.

## PRIVATE ARBITRATION (non-binding and binding)

Private, non-binding arbitration is the same as judicial arbitration, except that the parties do not go through the ADR Programs office to choose an arbitrator, and the arbitrator's award will not become a judgment of the court unless all parties agree. Parties must pay the arbitrator's normal fees.

Binding arbitration is different from judicial or private non-binding arbitration because the arbitrator's decision is final. Parties give up their right to have a judge review their case later (except for reasons listed in California Code of Civil Procedure, Section 1286.2.) Binding arbitration rules are listed in California Code of Civil Procedure, Sections 1280-1288.8. Parties may also agree any time before the judge has made a decision that ends the case to switch to binding arbitration. Parties choose the arbitrator on their own, and must pay the arbitrator's normal (not $150) fees.

## SETTLEMENT MENTOR CONFERENCE

Settlement mentors are independent, experienced trial attorneys that a judge has assigned to help parties look for ways to settle their case. The conference is free and is held in the courthouse. It is often held on the morning of trial, but it can be scheduled anytime. These conferences usually last two or three hours. Parties do not present evidence and do not call witnesses. Parties can ask the settlement mentor to keep some information confidential (private) from the other party, but not from the judge. The settlement mentor can share any information with the judge, or involve the judge in settlement discussions.  All principals, clients, and claims representatives must attend the settlement mentor conference.

## NEUTRAL CASE EVALUATION

In neutral case evaluation, an independent attorney (evaluator) reviews documents and listens to each party's side of the case. The evaluator then tells the parties what they think could happen if the case went to trial. Many people use the evaluator's opinion to reach an agreement on their own, or use this information later in mediation or arbitration to settle their case.

Parties email, fax or visit the ADR Programs office to get a list of evaluators. After parties have agreed on an evaluator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the evaluator at least 5 court days before evaluation starts. ALL parties and their attorneys must go to neutral case evaluation. The evaluation can be held whenever and wherever the parties and the evaluator want, as long as they finish before the court deadline. If the parties go through the court's ADR program, evaluators do not charge any fees for the first half hour spent scheduling or preparing for the evaluation conference. They also do not charge fees for the first two hours of the evaluation. If parties need more time, they must pay that evaluators regular fees. Some evaluators ask for a deposit before evaluation starts. Evaluators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the evaluation. A party whose court fees have been waived (cancelled) may ask if their evaluation fees or deposit can be waived.

## TEMPORARY JUDGE

Some parties want a trial, but want to choose who will decide the case and when the trial will take place. Parties can agree on an attorney that they want the court to appoint as a temporary judge for their case. (See Article 6, Section 21 of the State Constitution and Rule 2.830 of the California Rules of Court.) Temporary judges have nearly the same authority as a superior court judge to conduct a trial and make decisions. As long as the parties meet the court deadline, they can schedule the trial at their own and the temporary judge's convenience.

Each of the temporary judges on the court's panel has agreed to serve at no charge for up to 5 court days. If the parties need more time, they must pay that person's regular fees. All parties and their lawyers must attend the trial, and provide a copy of all briefs or other court documents to the temporary judge at least two weeks before the trial. These trials are similar to other civil trials, but are usually held outside the court. The temporary judge's decision can be appealed to the superior court. There is no option for a jury trial. The parties must provide their own court reporter.

## SPECIAL MASTER

A special master is a private lawyer, retired judge, or other expert appointed by the court to help make day-to-day decisions in a court case. The special master's role can vary, but often includes making decisions that help the discovery (information exchange) process go more smoothly. He or she can make decisions about the facts in the case. Special masters can be especially helpful in complex cases. The trial judge defines what the special master can and cannot do in a court order.

Special masters often issue both interim recommendations and a final report to the parties and the court. If a party objects to what the special master decides or reports to the court, that party can ask the judge to review the matter. In general, the parties choose (by stipulation) whom they want the court to appoint as the special master, but there are times (see California Code of Civil Procedure Section 639), when the court may appoint a special master or referee without the parties' agreement. The parties are responsible to pay the special master's regular fees.

## COMMUNITY MEDIATION SERVICES

Mediation Services are available through non-profit community organizations. These low-cost services are provided by trained volunteer mediators.  For more information about these programs contact the ADR Program at adrweb@contracosta.courts.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| — Nanci E. Nishimura (152621), Brian Danitz (247403), James G. Dallal (277826) Anya Thepot (318430) Cotchett, Pitre & McCarthy, LLP 840 Malcolm Road, Suite 200, Burlingame, CA 94010 | |

TELEPHONE NO.: (650) 697-6000       FAX NO.: (650) 697-0577
ATTORNEY FOR (Name): Plaintiff: Franklin EWC, Inc. and Kathy Franklin

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS: 725 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME: Wakefield Taylor Courthouse

**F I L E D**

MAY 21 2020

BY R. HERT, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
D. Real, Deputy Clerk

CASE NAME:
Franklin EWC, Inc., et al. v. The Hartford Financial Services Group, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | C20-00888 |
| | | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [✓] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is   [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve       e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence       f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action (specify): 9
5. This case [ ] is   [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 20, 2020
Nanci E. Nishimura
_____            _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the **cases** that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]                **CIVIL CASE COVER SHEET**                Page 2 of 2

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# IN AND FOR THE COUNTY OF CONTRA COSTA

_____

_____

Plaintiff(s) / Cross Plaintiff(s)

vs.

_____

_____

Defendant(s) / Cross Defendant(s)

### _ADR Case Management Stipulation and Order_
### _(Unlimited Jurisdiction Civil Cases)_

CASE NO: _____

---

> ► ALL PARTIES STIPULATING TO ADR AND DELAYING THEIR CASE MANAGEMENT CONFERENCE 90 DAYS MUST **SUBMIT THE ORDER FOR THE JUDGE'S SIGNATURE AND FILE THIS FORM AT LEAST 15 DAYS BEFORE THEIR CASE MANAGEMENT CONFERENCE. (NOT AVAILABLE IN COMPLEX LITIGATION CASES.)**
>
> ► PARTIES MUST ALSO **SEND A COPY OF THIS FILED** STIPULATION AND ORDER TO THE ADR OFFICE: EMAIL adrweb@contracosta.courts.ca.gov  FAX: (925) 608-2109  MAIL: P.O. BOX 911, MARTINEZ, CA 94553

---

**Counsel and all parties agree to delay their case management conference 90 days to attend ADR and complete pre-ADR discovery as follows:**

1. Selection and scheduling for Alternative Dispute Resolution (ADR):
   a. The parties have agreed to ADR as follows:
      i.   ❏ Mediation  (❏ Court-connected ❏ Private)
      ii.  ❏ Arbitration  (❏ Judicial Arbitration (non-binding)  ❏ Private (non-binding)  ❏ Private (binding))
      iii. ❏ Neutral case evaluation
   b. The ADR neutral shall be selected by (date): _____ (no more than 14 days after filing this form)
   c. ADR shall be completed by (date): _____ (no more than 90 days after filing this form)
2. The parties will complete the following discovery plan:
   a. ❏ Written discovery:  (❏ Additional page(s) attached)
      i.   ❏ Interrogatories to:
      ii.  ❏ Request for Production of Documents to:
      iii. ❏ Request for Admissions to:
      iv.  ❏ Independent Medical Evaluation of:
      v.   ❏ Other:
   b. ❏ Deposition of the following parties or witnesses: (❏ Additional page(s) attached)
      i.   _____
      ii.  _____
      iii. _____
   c. ❏ No Pre-ADR discovery needed
3. The parties also agree: _____

4. Counsel and self-represented parties represent they are familiar with and will fully comply with all local court rules related to ADR as provided in Title Three; Chapter 5, will pay the fees associated with these services, and understand that if they do not, without good cause, comply with this stipulation and all relevant local court rules, they may be subject to sanctions.

| | | | |
|---|---|---|---|
| _____ | Fax | _____ | Fax |
| Counsel for Plaintiff (print) | | Counsel for Defendant (print) | |
| _____ | | _____ | |
| Signature | | Signature | |
| _____ | Fax | _____ | Fax |
| Counsel for Plaintiff (print) | | Counsel for Defendant (print) | |
| _____ | | _____ | |
| Signature | | Signature | |

---

Pursuant to the Stipulation of the parties, and subject to the _Case Management Order_ to be filed, **IT IS SO ORDERED** that the Case Management Conference set for _____ is vacated and rescheduled for _____ at (8:30 a.m. / _____ ) **Plaintiff / Plaintiff's counsel must notify all parties of the new case management conference.**

Dated: _____      _____

**Judge of the Superior Court**

---

## Superior Court of California, County of Contra Costa

# NOTICE TO DEFENDANTS
In <u>Unlimited Jurisdiction</u> Civil Actions

<u>YOU ARE BEING SUED</u>.  The packet you have been served should contain:

    a.    The Summons

    b.    The Complaint

    c.    The Notice of Case Management (shows hearing date and time)

    d.    <u>Blank</u>: Case Management Statement (Judicial Council Form CM-110)

    e.    <u>Blank</u>: Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days (Local Court Form CV-655b)

    f.    Alternative Dispute Resolution (ADR) Information  (Local Court Form CV-655c-INFO)

---

 **WHAT DO I DO NOW?** 

### You must:

1. **Prepare your response**   YOU COULD LOSE YOUR CASE—even before it is heard by a judge or before you can defend yourself, if you do not prepare and file a response on time. See the other side of this page for types of responses you can prepare.

2. **Complete the *Case Management  Statement  (CM-110)***

3. **File and serve your court papers on time**   Once your court forms are complete, you <u>must</u> file 1 original and 2 copies of the forms at court. An adult who is NOT involved in your case must serve one set of forms on the Plaintiff. If you were served in person you must file your response in 30 days. If the server left a copy of the papers with an adult living at your home or an adult in charge at your work or you received a copy by mail you must file your response in 40 days.

4. **Prove you served your court papers on time**   by having your server complete a *Proof of Service, (Judicial Council form POS-040)*, that <u>must</u> be filed at the court within <u>60</u> days.

5. **Go to court** on the date and time given in the *Notice of Case Management Conference*.

6. **Consider trying to settle your case before trial**   If you and the other party to the case can agree to use mediation, arbitration or neutral case evaluation, the *<u>Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days</u>* can be filed with your other papers.  For more information read the enclosed ADR information, visit www.cc-courts.org/adr, or email adrweb@contracosta.courts.ca.gov.

**IMPORTANT! The court recommends consulting an attorney for all or part of your case.  While you may represent yourself, lawsuits can be complicated, and the court cannot give you legal advice.**

---

<u>COURT FEES:</u>  You must pay court fees the first time you file your papers.  If you also file a motion, you must pay another fee.  If you cannot afford the fees, you may ask the court to waive (allow you not to pay) fees. Use Judicial Council forms FW-001-INFO [information sheet]; FW-001 [application]; and FW-003 [order].

<u>COURT FORMS:</u>  Buy forms at the Law Library (1020 Ward Street, Martinez, CA) or download them for free at: www.courtinfo.ca.gov/forms/

## WHAT KIND OF RESPONSES CAN I FILE?

1. If you disagree with some or all of what the plaintiff says in the complaint because you believe, or know it is not true, you can file an <u>ANSWER</u>.

2. If you have a claim in the same case against the plaintiff, you may file a <u>CROSS-COMPLAINT</u>.

3. If you want to ask the court to do something on your behalf, you may file a <u>MOTION</u> *(See TYPES OF MOTIONS below)*

## HOW DO I PREPARE AN ANSWER?

There are two kinds of Answers you can use, depending on whether the Complaint was verified. You can tell if a Complaint is verified because it says "Verified Complaint" and/or has a signed oath on the last page.

**For complaints that are NOT verified:**

>    Use Judicial Council form PLD-050 – General Denial

**For complaints that ARE verified:**

>    a. For personal injury, property damage, and wrongful death claims, use Judicial Council PLD-PI-003 (do <u>not</u> check number 2).
>
>    b. For contract claims, use Judicial Council PLD-C-010 (do <u>not</u> check number 3a).
>
>    c. Be sure to deny <u>every</u> claim with which you disagree. For example, you might write: *"I believe, or know, that the information in paragraph #__ is untrue/incorrect."* Continue your list until you have addressed each paragraph in the Complaint.

**NOTE:** The Judicial Council Answer forms have spaces for your affirmative defenses. Be sure to include them or you may not be able to use them later. To find out what your affirmative defenses might be, go to the law library and ask the librarian to help you find the information you need.

**If you want to file a Cross-Complaint, you must do so at the same time you file the Answer.**

>    a. For a personal injury, property damage, and/or wrongful death Cross-Complaint, use Judicial Council form PLD-PI-002.
>
>    b. For a contract Cross-Complaint, use Judicial Council PLD-C-001.

## TYPES OF MOTIONS

Written motions are documents that ask the court to do something. You may have to file an *Answer* at the same time. At this point in the case, you can only make Motions from the following list:

1. <u>Demurrer</u> *(the facts stated in the complaint are wrong, or the deadline to file the lawsuit has passed)*;

2. <u>Motion to Strike</u> *(the complaint is unclear; does not follow the law, "doesn't matter", etc.)*;

3. <u>Motion to Transfer</u> *(the complaint is in the wrong court or there's a more appropriate court)*;

4. <u>Motion to Quash Service of Summons</u> *(you were not legally served)*;

5. <u>Motion to Stay</u> *(put the case on hold)*; or

6. <u>Motion to Dismiss</u> *(stops the case)*.

>    **NOTE: Motions are very complicated and you may want to hire a lawyer to help you.**

## WHERE CAN I GET MORE HELP?

- **Lawyer Referral Service**: (925) 825-5700
- **Bay Area Legal Aid**: (800) 551-5554
- **Contra Costa County Law Library**       Martinez: (925) 646- 2783       Richmond: (510) 374-3019
- **Ask the Law Librarian**:    www.247ref.org/portal/access_law3.cfm

 **CT** Corporation

**Service of Process
Transmittal**
06/03/2020
CT Log Number 537740790

**TO:**   Michael Johnson, Legal Assistant
The Hartford
1 Hartford Plz, HO-1-09
Hartford, CT 06155-0001

**RE:**   **Process Served in Connecticut**

**FOR:**   Sentinel Insurance Company, Ltd.  (Domestic State: CT)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | FRANKLIN EWC, INC. and KATHY FRANKLIN, Pltfs. vs. THE HARTFORD FINANCIAL SERVICES GROUP, INC., et al., Dfts. // To: Sentinel Insurance Company, Ltd. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # C2000888 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, East Hartford, CT |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/03/2020 at 13:11 |
| **JURISDICTION SERVED :** | Connecticut |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/03/2020, Expected Purge Date: 06/08/2020<br><br>Image SOP<br><br>Email Notification,  Michael Johnson  MICHAEL.JOHNSON@THEHARTFORD.COM<br><br>Email Notification,  Fiona Rosenberg  Fiona.Rosenberg@thehartford.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>155 Federal St Ste 700<br>Boston, MA 02110-1727 |
| **For Questions:** | 800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Connecticut's Official
State Website

## The Office of
# Secretary of the State Denise W. Merrill

---

## Business Inquiry

### Business Details

| | |
|---|---|
| **Business Name:** SENTINEL INSURANCE COMPANY, LTD. | **Citizenship/State Inc:** Domestic/CT |
| **Business ID:** 0621786 | **Last Report Filed Year:** NONE |
| **Business Address:** NONE | **Business Type:** Other/Insurance |
| **Mailing Address:** NONE | **Business Status:** Active |
| **Date Inc/Registration:** Jul 06, 1999 | |
| **Annual Report Due Date:** Not Applicable | |
| **NAICS Code:** NONE | **NAICS Sub Code:** NONE |

### Principals Details

No Principal required for Business with Id: 0621786

### Agent Summary

| | |
|---|---|
| **Agent Name** | C T CORPORATION SYSTEM |
| **Agent Business Address** | 67 BURNSIDE AVE, EAST HARTFORD, CT, 06108-3408 |
| **Agent Residence Address** | NONE |

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
THE HARTFORD FINANCIAL SERVICES GROUP, INC., SENTINEL INSURANCE COMPANY,
LTD., and Does 1 through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

FRANKLIN EWC, INC., and KATHY FRANKLIN,

F I L E D

MAY 2 1 2020

K. BIXXER CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By. _____ B. Pool, Deputy Clerk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>CONTRA COSTA COUNTY SUPERIOR COURT<br>725 Court Street, Martinez, CA 94553 | CASE NUMBER: *(Número del Caso):*<br>**C 20 - 00888** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Nanci E. Nishimura (152621) Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Rd., Suite 200, Burlingame, CA 94010 / T:650-697-6000

| DATE: **MAY 2 1 2020** | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* B. POOL | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* SENTINEL INSURANCE COMPANY, LTD.

   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courts.ca.gov |

True Copy
Attest

Process Server
Christine _____

1  **COTCHETT, PITRE & MCCARTHY LLP**
   NANCI E. NISHIMURA (SBN 152621)
2  nnishimura@cpmlegal.com
   BRIAN DANITZ (SBN 247403)
3  bdanitz@cpmlegal.com
   JAMES G. DALLAL (SBN 277826)
4  jdallal@cpmlegal.com
   ANYA N. THEPOT (SBN 318430)
5  athepot@cpmlegal.com
   840 Malcolm Road, Suite 200
6  Burlingame, California 94010
   Telephone: (650) 697-6000
7  Facsimile: (650) 697-0577
8

9  *Attorneys for Plaintiffs*

10

FILED

MAY 21 2020

K. BIEKER CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA

By _____
   R. Paul, Deputy Clerk

PER LOCAL RULE, THIS
CASE IS ASSIGNED TO
DEPT. 33. FOR ALL
PURPOSES

SUMMONS ISSUED

11  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12  **COUNTY OF CONTRA COSTA**

13

| | |
|---|---|
| 14  FRANKLIN EWC, INC., and<br>KATHY FRANKLIN,<br>15<br>          Plaintiffs,<br>16<br>     v.<br>17<br>18  THE HARTFORD FINANCIAL SERVICES<br>GROUP, INC.,<br>19  SENTINEL INSURANCE COMPANY, LTD.,<br>and Does 1 through 10, inclusive,<br>20<br>21           Defendants. | Case No.  **C20-00888**<br><br>**COMPLAINT FOR:**<br><br>1.  **BREACH OF CONTRACT,**<br>2.  **BREACH OF COVENANT OF<br>GOOD FAITH AND FAIR<br>DEALING,**<br>3.  **BAD FAITH DENIAL OF<br>INSURANCE CLAIM,**<br>4.  **UNFAIR BUSINESS<br>PRACTICES,**<br>5.  **FRAUDULENT<br>MISREPRESENTATION,**<br>6.  **CONSTRUCTIVE FRAUD,**<br>7.  **UNJUST ENRICHMENT,**<br>8.  **DECLARATORY RELIEF, and**<br>9.  **INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

22
23
24
25
26
27
28

**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**

720705

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 3

II.     COVID-19 AND CLOSURE ORDERS ........................................................ 4

III.    WIDESPREAD DENIAL OF INSURANCE CLAIMS.................................. 5

IV.     INSURANCE DEFENDANTS AND DENIAL OF COVERAGE ...................... 6

V.      VIOLATIONS OF CALIFORNIA LAW ...................................................... 7

VI.     PARTIES ....................................................................................................... 7

        A.      Plaintiffs.............................................................................................. 7

        B.      Insurance Company Defendants ........................................................ 8

        C.      Doe Defendants................................................................................... 8

VII.    AIDING AND ABETTING AND CO-CONSPIRATORS ............................ 9

VIII.   JURISDICTION AND VENUE .................................................................... 9

IX.     FACTUAL BACKGROUND ......................................................................... 10

        A.      EWC Fresno........................................................................................ 10

        B.      Pandemic in California ....................................................................... 10

        C.      Closure Orders Issued by State and County Civil Authorities ............... 11

        D.      EWC Fresno Forced to Close and Resulting Financial Losses ............... 12

        E.      EWC Fresno Suffers Covered Loss ..................................................... 12

        F.      Insurance Defendants' Denial of Plaintiffs' Claim................................... 15

X.      CAUSES OF ACTION .................................................................................. 16

        FIRST CAUSE OF ACTION
        BREACH OF CONTRACT........................................................................... 16

        SECOND CAUSE OF ACTION
        BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING ........... 17

        THIRD CAUSE OF ACTION
        BAD FAITH DENIAL OF INSURANCE CLAIM.......................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FOURTH CAUSE OF ACTION
UNFAIR BUSINESS PRACTICES UNDER BUS. & PROF. CODE § 17200, ET SEQ. . 19

FIFTH CAUSE OF ACTION
FRAUDULENT MISREPRESENTATION ........................................................ 22

SIXTH CAUSE OF ACTION
CONSTRUCTIVE FRAUD........................................................................... 23

SEVENTH CAUSE OF ACTION
UNJUST ENRICHMENT ........................................................................... 23

EIGHTH CAUSE OF ACTION
DECLARATORY RELIEF ........................................................................... 24

NINTH CAUSE OF ACTION
EQUITABLE INJUNCTIVE RELIEF ............................................................. 26

XI.   PRAYER FOR RELIEF ............................................................................ 26

DEMAND FOR JURY TRIAL ........................................................................... 27

1    Plaintiffs Franklin EWC, Inc. and Kathy Franklin (collectively, "Plaintiffs") file this
2  Complaint against defendants The Hartford Financial Services Group, Inc., and Sentinel Insurance
3  Company, Ltd. (collectively, "Insurance Defendants"), and Does 1 through 10 ("Doe Defendants"),
4  and allege as follows:

5  **I.    INTRODUCTION**

6    1.    European Wax Center – Fresno – Riverpark ("EWC Fresno") is a waxing salon
7  located just off California State Route 41 in Fresno, California that is owned by Plaintiff Franklin
8  EWC, Inc.  Franklin EWC, Inc. is registered and maintains its headquarters in Moraga, California.
9  Beginning on **March 19, 2020**, EWC Fresno was forced to close its doors to the public because of
10  a series of orders issued by the State of California ("Closure Orders").  The Closure Orders have
11  **prohibited** customers from accessing EWC Fresno's premises due to the Coronavirus Disease 2019
12  ("COVID-19") pandemic.  As a result, Plaintiffs suffered substantial financial losses and had to let
13  go approximately 30 workers.

14    2.    EWC Fresno is a franchise of European Wax Center, a network of over 800 waxing
15  salons through the United States. Plaintiff Kathy Franklin started Franklin EWC in 2011 and has
16  owned and operated EWC Fresno since October 2013. In that time she turned it into one of the most
17  profitable European Wax Center locations in California. The employees had developed many
18  longstanding relationships with the salon's clients, many of whom visited regularly. Based on this
19  enviable record of success, Ms. Franklin chose to invest additional resources in the business in the
20  fall of 2019 and paid for the construction of three new waxing suites, an additional restroom, and a
21  storage room. Many of EWC Fresno's 30 employees had worked there for more than five years, and
22  the business provided them with medical, dental, vision, and 401-K benefits.

23    3.    To protect its business and employees from the loss caused by a situation like this,
24  Franklin EWC obtained Spectrum Business Owner's Policy No. 21 SBA RS4714 (the "Policy")
25  from Insurance Defendants, which includes applicable business interruption coverage.  In breach of
26  the insurance obligations that Insurance Defendants undertook in exchange for receipt of Plaintiffs'
27  premium payments—which Plaintiffs dutifully and regularly paid—Insurance Defendants denied
28  Plaintiffs' insurance claims arising from the interruption of Plaintiffs' business caused by the

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF          3

1  Closure Orders.  Insurance Defendants denied the claims notwithstanding the plain language of the
2  Policy, which provides coverage for such losses, and they did so fraudulently in violation of
3  California law.

4  **II.**     **COVID-19 AND CLOSURE ORDERS**

5       4.      In March 2020, the New England Journal of Medicine, one of the world's leading
6  peer-reviewed medical journals, published a study that describes severe acute respiratory syndrome
7  coronavirus 2 (SARS-CoV-2) (the "Coronavirus"), the official name for the virus that causes
8  COVID-19, as a virus that is transmitted by respiratory droplets that can be suspended in air for
9  several hours.  Over time, these droplets containing Coronavirus fall onto and can physically remain
10  on surfaces, such as metal, glass, plastic, and wood, for several days.  Persons who touch these
11  surfaces, even days later, may become infected.

12       5.      On **March 12, 2020**, California Governor Gavin Newsom issued Executive Order N-
13  25-20, which requires all California "to heed any orders and guidance of state and local public health
14  officials, including but not limited to the imposition of social distancing measures, to control the
15  spread of COVID-19."

16       6.      On **March 19, 2020**, California Governor Gavin Newsom issued Executive Order N-
17  33-20, which similarly requires that Non-Essential Businesses statewide, including waxing salons
18  such as EWC Fresno, immediately close their doors to all customers.

19       7.      As expressly stated in multiple countywide closure orders issued in California
20  (including orders issued by Napa, Solano, Sonoma, Sutter, and Yuba Counties), the recent business
21  closure orders have been issued because the Coronavirus was proliferating onto virtually every
22  surface and object in, on, and around commercial premises such as that belonging to EWC Fresno,
23  and thereby causing **direct physical damage** and loss in and to the immediate area of such
24  commercial premises, and thereby triggering coverage under commercial insurance policies.  *See,*
25  *e.g.*, Order of the Napa County Health Officer ¶ 6 (Mar. 18, 2020) ("This Order is issued based on
26  evidence of increasing occurrence of COVID-19 throughout the Bay Area, increasing likelihood of
27  occurrence of COVID-19 within the County, and the **physical damage to property caused by the**
28  **virus**."); Order of the Solano County Health Officer No. 2020-04 ¶ 10 (Mar. 30, 2020) ("[T]his

1    Order is given because of the propensity of the virus to spread person to person and also because **the**
2    **virus physically is causing property loss or damage** due to its proclivity to attach to surfaces.");
3    Order of the Sonoma County Health Officer No. C19-05 ¶ 17 (Mar. 31, 2020) ("This order is given
4    because of the propensity of the virus to spread person-to-person, and also because **the virus**
5    **physically is causing property loss or damage** due to its proclivity to stay airborne and to attach
6    to surfaces for prolonged periods of time."); Order of the Sutter County and Yuba County Bi-County
7    Public Health Officer Restricting Activities in Response to COVID-19 Outbreak ¶ 7 (Apr. 6, 2020)
8    (same as March 31 Sonoma County Order).

9          8.    The resulting economic harm from these Closure Orders and from the widespread
10   physical presence of the Coronavirus has been significant.  Millions of California residents have lost
11   their jobs, and hundreds of thousands of California businesses have had to close and are suffering
12   substantial losses, creating unprecedented ripple effects through local, state, and national economies.

13   **III.    WIDESPREAD DENIAL OF INSURANCE CLAIMS**

14         9.    Many, if not most, of the California businesses forced to close their doors to the
15   public had planned ahead by purchasing insurance to safeguard against the business interruption that
16   results from precisely these kinds of civil authority closure orders.  Since having to close down,
17   businesses have filed claims for business interruption coverage with their insurance carriers as a
18   lifeline to save their businesses and, by extension, their employees and communities.  However,
19   Insurance Defendants, and other insurance companies, have **summarily declined coverage.**

20         10.   According to persons knowledgeable about the insurance industry's blanket denials
21   of such business interruption claims:

22                  "The [insurance] tactic is always the same . . . . Deny everything you
23                  [insurer] owe, slow the payments, don't pay the emergency funds you owe,
24                  and then, because there's such carnage, the [insurance] industry goes with
25                  their lobbyists, with their advocacy groups, and with the senators, and they
26                  say [to the government] we need disaster relief funds."

27         11.   Moreover, "[a]ccording to data from ratings firm A.M. Best Co., the insurance
28   industry as a whole has $18.4 billion in net reserves for future payouts. But industry trade groups

1  | like the American Property Casualty Insurance Association (APCIA) say they don't have the funds
2  | to pay out the claims from a pandemic.  'Pandemic outbreaks are uninsured because they are
3  | uninsurable,' says APCIA's David A. Sampson.  If insurance is forced to pay claims by legislation,
4  | for example, their reinsurers might not cover *them*."  This blanket denial of business interruption
5  | insurance claims is precisely what is happening here to Plaintiffs.  For the insurance industry, the
6  | goal is to generate revenues by charging high premiums for insurance while avoiding paying
7  | anything on legitimate claims by businesses like EWC Fresno.

8  | 12.    The Closure Orders **prohibited all customers from accessing** EWC Fresno's
9  | premises due to the physical presence of COVID-19 in the community and on the surfaces of the
10 | property around EWC Fresno.  As a result, EWC Fresno was forced to close its doors to the public,
11 | and Plaintiffs continue to suffer substantial financial losses.

12 | **IV.    INSURANCE DEFENDANTS AND DENIAL OF COVERAGE**

13 | 13.    In **June 2019**, Insurance Defendants entered into a contract of insurance with
14 | Plaintiffs, Spectrum Business Owner's Policy No. 21 SBA RS4714, for the period of June 8, 2019
15 | through June 8, 2020.  Under this Policy, Franklin EWC agreed to pay insurance premiums to
16 | Insurance Defendants in exchange for Insurance Defendants' promise to cover Plaintiffs for losses
17 | including, but not limited to, business income losses according to the terms set forth in the Policy.
18 | Since the inception of the Policy, Plaintiffs have paid all premiums and the Policy has at all relevant
19 | times remained in full force and effect.

20 | 14.    The Policy specifically includes (a) coverage for business interruption caused by an
21 | order of a civil authority ("**Civil Authority Coverage**"), (b) **Lost Business Income Coverage**,
22 | (c) **Extra Expense Coverage**, and (d) Limited Fungi, Bacteria, Or Virus Coverage ("**Limited Virus**
23 | **Coverage**").

24 | 15.    One circumstance in which the Policy's business interruption coverage can be
25 | triggered is when a complete cessation of Plaintiffs' business operations is required as the direct
26 | result of a civil authority's issuance of a Closure Order.  The Civil Authority Coverage provision in
27 | the Policy provides, in pertinent part:

28 |

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF        6

Civil Authority

(1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises."

16.     Here, coverage under the Policy's Civil Authority Coverage was triggered when a complete cessation of EWC Fresno's operations was the required and direct result of the Closure Orders issued by the State of California.

17.     These Closure Orders were issued as a direct result of a Covered Cause of Loss to property under the Policy, given that they created a direct physical loss by shutting off physical access to the insured premises by Plaintiffs and EWC Fresno's customers.

18.     These Closure Orders were also issued as a direct result of a Covered Cause of Loss to property under the Policy, seeing as the Coronavirus that was proliferating onto virtually every surface and object in, on, and around EWC Fresno and its surrounding environs was then causing, and is continuing to cause, **direct physical damage** and loss in and to the immediate area of EWC Fresno.

V.     **VIOLATIONS OF CALIFORNIA LAW**

19.     This Complaint sets forth in detail direct violations of California laws that are intended to protect insurance policyholders who act in good faith with their insurance carriers. The details below affect not only the named Plaintiffs, but also the **30 California residents** employed at EWC Fresno.

VI.     **PARTIES**

A.     **Plaintiffs**

20.     Plaintiff FRANKLIN EWC, INC. ("Franklin EWC"), is a California corporation registered in Moraga, California, within Contra Costa County.  Franklin EWC owns, operates, manages, and/or controls the waxing salon known as European Wax Center – Fresno – Riverpark ("EWC Fresno") located at 7885 North Via Del Rio, Fresno, California 93720 (the "Insured

1    Premises") and that employs many people.  At all relevant times, Franklin EWC has owned, leased,

2    managed, and/or controlled the Insured Premises.

3        21.    Plaintiff **KATHY FRANKLIN** ("Ms. Franklin") is a California resident and the sole

4    owner and operator of Franklin EWC.

5    **B.    Insurance Company Defendants**

6        22.    Defendant **THE HARTFORD FINANCIAL SERVICES GROUP, INC.**

7    ("Hartford"), is a Delaware corporation with its principal place of business in Connecticut.  At all

8    relevant times, Hartford has been and is authorized to do business and is doing business in the state

9    of California and in Fresno County.  At all relevant times, Hartford has been and is transacting the

10   business of insurance in the state of California and in Fresno County, and the basis of this suit arises

11   out of said conduct.

12       23.    Defendant **SENTINEL INSURANCE COMPANY, LTD.** ("Sentinel"), is a State

13   corporation with its principal place of business in Connecticut.  Sentinel is an insurance company

14   that is part of Hartford.  At all relevant times, Sentinel has been authorized to do business and is

15   doing business in the state of California and in Fresno County.  At all relevant times, Sentinel has

16   been and is transacting the business of insurance in the state of California and in Fresno County, and

17   the basis of this suit arises out of said conduct.

18       24.    Upon information and belief, each of the Insurance Defendants was, at all relevant

19   times, in any agency or joint-venture relationship with the other Insurance Defendants, and was at

20   all relevant times acting within the purpose and scope of said relationship.

21   **C.    Doe Defendants**

22       25.    Defendants DOES 1 through 10 ("Doe Defendants") were, at all relevant times,

23   transacting or otherwise engaged in the business of insurance in the State of California and in Fresno

24   County, and the basis of this suit arises out of said conduct.  Though the true names and capacities

25   of the Doe Defendants are unknown to Plaintiffs, each of the Doe Defendants is, upon information

26   and belief, partially or wholly liable for the unlawful acts or omissions referred to herein, and for

27   the resulting harm to Plaintiffs.  Many of Insurance Defendants' agents reside and operate in Fresno

28   County.

26. The Insurance Defendants and Doe Defendants are collectively referred to herein as Defendants.

VII. **AIDING AND ABETTING and CO-CONSPIRATORS**

27. At all times relevant to this Complaint, each Defendant was acting as the agent, alter ego, servant, employee, and/or representative of the other Defendants, and was acting within the course and scope of their agency, employment, and/or representation, with the full knowledge, consent, permission, authorization, and ratification, either express or implied, of the other Defendants in performing the acts alleged in this Complaint.

28. In committing the wrongful acts alleged herein, each of the Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert and/or conspired with one another in furtherance of the improper acts and transactions that are the subject of this Complaint.

29. Each of the Insurance Defendants' agents aided and abetted and rendered substantial assistance in the wrongs complained of herein, and also acted in a knowing conspiracy to defraud Plaintiffs. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant, including each of the Doe Defendants, acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of their overall contribution to and furtherance of the wrongdoing.

VIII. **JURISDICTION AND VENUE**

30. This Court has subject matter jurisdiction over this action. The conduct giving rise to this action concerns coverage under an insurance policy taken out by a business with its headquarters in Contra Costa County, California. This action is based, in substantial part, on the breach of an insurance contract concerning a California property and business and is based on violations of California law. The amount in controversy exceeds the minimum jurisdictional amount of unlimited civil cases.

31. Venue is proper because the conduct giving rise to this action concerns a denial of coverage under an insurance policy taken out by a business with its headquarters in Contra Costa County, California, by the Defendants and their agents and co-conspirators.

## IX.   FACTUAL BACKGROUND

### A.   EWC Fresno

32.   European Wax Center – Fresno – Riverpark is a wildly successful and award-winning waxing salon located off California State Route 41 in Fresno. The salon offers a range of face and body hair removal and skincare services to its male and female clientele and strives to provide them "unbelievably smooth skin with a side of confidence." Owner Katherine Franklin opened her first salon in 2011 and the Fresno location in 2013 and has built it into a highly successful, locally owned and operated business.

### B.   Pandemic in California

33.   COVID-19 is a deadly infectious disease caused by the recently discovered Coronavirus known as SARS-CoV-2. It first emerged in or about December 2019. Because this Coronavirus is highly transmissible, it has been and is rapidly spreading throughout the world, including throughout California.

34.   According to the World Health Organization ("WHO"): "People can catch COVID-19 from others who have the virus. The disease can spread from person to person through small droplets from the nose or mouth which are spread when a person with COVID-19 coughs or exhales. These droplets land on objects and surfaces around the person. Other people then catch COVID-19 by touching these objects or surfaces, then touching their eyes, nose or mouth. People can also catch COVID-19 if they breathe in droplets from a person with COVID-19 who coughs out or exhales droplets."[1] Because the Coronavirus that causes COVID-19 is contained in and transmitted by droplets that land indiscriminately on the surfaces of property with potentially fatal consequences, it unquestionably causes physical damage and loss.

35.   According to the U.S. Centers for Disease Control and Prevention ("CDC"): "COVID-19 seems to be spreading easily and sustainably in the community ('community spread') in many affected geographic areas" in the United States.[2]

---

[1] WHO website, *Q&A on coronaviruses (COVID-19)*, "How does COVID-19 spread?," https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last visited Apr. 15, 2020).
[2] CDC website, *Coronavirus Disease 2019 (COVID-19): Frequently Asked Questions*, "How COVID-19 Spreads: How does the virus spread?," https://www.cdc.gov/coronavirus/2019-ncov/faq.html#covid19-basics (last visited Apr. 28, 2020).

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF        10

36.    On **January 26, 2020**, the CDC announced California's first positive test result for COVID-19.

C.    **Closure Orders Issued by State and County Civil Authorities**

37.    On **March 4, 2020**, California Governor Gavin Newsom issued a Proclamation of a State of Emergency with respect to the COVID-19 pandemic. Among other things, the Proclamation finds that there were, as of that date, and despite the widespread unavailability of COVID-19 testing, already 53 confirmed cases of COVID-19 in California, and more than 9,400 Californians across 49 counties in home monitoring because of possible travel-based exposure to the Coronavirus.

38.    On **March 11, 2020**, the WHO declared the outbreak a global pandemic.

39.    On **March 12, 2020**, Governor Newsom issued Executive Order N-25-20 ("**March 12 Executive Order**"), ordering that: "All residents are to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19" (¶ 1). This Order took effect on March 12, 2020, and has remained continuously in effect through the date of this Complaint.

40.    On **March 19, 2020**, the State of California issued an Order of the State Public Health Officer, which set baseline statewide restrictions on non-essential business activities effective until further notice. On that same date, Governor Newsom issued Executive Order N-33-20, expressly requiring California residents to follow the March 19 Order of the State Public Health Officer, and incorporating by reference California Government Code 8665, which provides that "[a]ny person . . . who refuses or willfully neglects to obey any lawful order . . . issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment" (Cal. Gov. Code § 8665). The March 19 Order of the State Public Health Officer and Executive Order N-33-20 (collectively, the "**Statewide Shelter Orders**") took immediate effect on March 19, 2020, and both have remained continuously in effect through the date of this Complaint.

///

**D.      EWC Fresno Forced to Close and Resulting Financial Losses**

41.      On **March 19, 2020,** EWC Fresno was forced to close its doors to the public and let 30 workers go. The March 19 Statewide Shelter Orders required EWC Fresno to close (the "Closure Order").

42.      Similarly, the Closure Order created direct physical loss by prohibiting customers accessing and otherwise patronizing EWC Fresno for purposes of obtaining waxing salon services.

43.      Further, even if the Closure Orders had not issued, EWC Fresno would have had to close the salon and suspend its operations due to the worsening pandemic-level presence or risk of presence of the Coronavirus in, on, and around the Insured Premises, and which has caused physical damage or loss to the Insured Premises and to the fixtures and personal property therein.  Moreover, the pandemic-level presence or risk of presence of the Coronavirus in those places where its employees, suppliers, and regular and potential clientele live, work, recreate, and travel means that EWC Fresno could not have reopened during this ongoing closure period due to the high statistical likelihood, if not certainty, that the Insured Premises would have been regularly re-damaged by the recurrent reintroduction of infectious Coronavirus into the Insured Premises from COVID-19-infected individuals and personal property.

44.      Due to the Closure Orders, as well as the presence of the Coronavirus in, on, and around the Insured Premises, Plaintiffs have suffered and continue to suffer substantial lost business income and other financial losses.

**E.      EWC Fresno Suffers Covered Loss**

45.      These extraordinary losses of business income are precisely why Plaintiffs took out the business interruption Policy with Insurance Defendants, and their losses are covered under the Policy.  Specifically, Plaintiffs losses are covered under the Policy's Civil Authority Coverage, Lost Business Income Coverage, Extra Expense Coverage, and Limited Virus Coverage.

46.      EWC Fresno is located in built urban environment in Fresno, California. Its neighbors are a mix of offices, restaurants, retail shops, and other businesses.

47.      According to the CDC, the National Institutes of Health ("NIH"), other infectious disease organizations around the world, and leading peer-reviewed medical journals such as the New

England Journal of Medicine, the Coronavirus spreads by droplets through person-to-person contact and through contact with surfaces and objects.[3] Although droplets containing Coronavirus may not be visible to the human eye, the droplets are undeniably physical and have spread on property surfaces.

48. The insidious nature of the Coronavirus is that it can remain infectious on a variety of surfaces and objects from a few hours to several days. The CDC reports that the Coronavirus was detected on various surfaces inside the cruise ship cabins of both symptomatic and asymptomatic passengers **17 days** after the cabins had been vacated.[4] The Coronavirus can remain on stainless steel and plastic up to 6 days; on glass, ceramics, silicon rubber, or paper up to 5 days; on paper currency up to 3 days; and on cardboard up to 24 hours.[5]

49. Droplets containing Coronavirus can also travel and remain infectious while suspended in the air. A widely reported study from the Massachusetts Institute of Technology found that the droplets from a cough can travel as far as 16 feet, and droplets from a sneeze can travel as far as 26 feet.[6] According to a recent report in the New York Times: "An infected person talking five minutes in a poorly ventilated space can produce as many viral droplets as one infectious cough. 'If there are 10 people in there, it's going to be a build up,' said Pratim Biswas, an aerosols experts at Washington University in St. Louis."[7]

---

[3] *See, e.g.*, CDC website, "How COVID-19 Spreads," https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited Apr. 28, 2020).

[4] *See* Leah E. Moriary, et al., "Public Health Responses to COVID-19 Outbreaks on Cruise Ships — Worldwide, February–March 2020," 69 *Morbidity and Mortality Weekly Report* 347 (released online Mar. 23, 2020), *available at* https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6912e3-H.pdf (last visited Apr. 28, 2020) (CDC journal article).

[5] *See* Alex W.H. Chin, et al., "Stability of SARS-CoV-2 in different environmental conditions," *The Lancet Microbe* (Apr. 2, 2020), *available at* https://doi.org/10.1016/S2666-5247(20)30003-3 (last visited Apr. 28, 2020); Neeltje van Doremalen, et al., "Aerosol and Surface Stability of SARS-CoV-2 as Compared to SARS-CoV-1," *New England Journal of Medicine* (Mar. 17, 2020), *available at* https://www.nejm.org/doi/pdf/10.1056/NEJMc2004973 (last visited Apr. 28, 2020); Guenter Kampf, et al., "Persistence of coronaviruses on inanimate surfaces and their inactivation with biocidal agents," 104 *Journal of Hospital Infection* 246 (Feb. 6, 2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7132493/pdf/main.pdf (last visited Apr. 28, 2020).

[6] *See* Lydia Bouroulba, "Turbulent Gas Clous and Respiratory Pathogen Emissions: Potential Implications for Reducing Transmission of COVID-19," *JAMA* (published online Mar. 26, 2020), *available at* https://jamanetwork.com/journals/jama/fullarticle/2763852 (last visited Apr. 28, 2020).

[7] *See* Yuliya Pashina-Kottas, et al., "This 3-D Simulation Shows Why Social Distancing Is So Important, *The New York Times* (Apr. 14, 2020), https://www.nytimes.com/interactive/2020/04/14

50.     As noted above, the Civil Authority provision of the Policy makes clear that "[t]his insurance is extended to apply to the actual loss of Business Income you [i.e., EWC Fresno] sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'" Policy, Special Property Coverage Form § A.5.q.  This coverage applies here."

51.     Here, Plaintiffs' losses are covered by the Civil Authority Coverage due to the Closure Order, which not only restricted the movement of people; rather, it also directly required that EWC Fresno close its doors, and therefore had the impact of taking away the use of the insured premises for their intended purpose.

52.     Moreover, the Closure Order was issued due to droplets containing the Coronavirus being on surfaces and objects in, on, around and in the immediate area of EWC Fresno.  These infected surfaces and objects outside of EWC Fresno include all the common fixtures, installations, and other kinds of property that exist in California's contemporary built environment (e.g., building façades, windows, walls, doorknobs, door handles and push plates, sidewalks, light posts, benches, parking meters, trash receptacles and bags, litter, bicycles and bicycle racks, automobiles, other fixtures and property, and passersby that occupy and line the street outside, and the immediate area surrounding, EWC Fresno.

53.     The Policy's Lost Business Income Coverage expressly provides coverage to pay for lost business income, regardless of whether the loss was the result of a civil authority order.  The Policy states, in relevant part:

> o.  **Business Income**
>
> > (1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration".  The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000

/science/coronavirus-transmission-cough-6-feet-ar-ul.html (last visited Apr. 15, 2020) (3-D visualization with commentary).

feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

* * *

(4) Business Income means the:

  (a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and

  (b) Continuing normal operating expenses incurred, including payroll.

(5) With respect to the coverage provided in this Additional Coverage, suspension means:

  (a) The partial slowdown or complete cessation of your business activities . . . .

Policy, Special Coverage Property Form § A.5.o. This coverage also applies here.

54.    Here, Plaintiffs' losses are covered by the Lost Business Income Coverage due to the physical loss of the cutting off of physical access to the Insured Premises. In addition these losses are covered because of the presence and physical damage that the Coronavirus caused to the Insured Premises itself, where every surface and object is implicated, including the doors and their parts, door jambs, handrails, floors and carpeting, walls, countertops, tables, chairs and other seating, light fixtures, bathrooms, and other fixtures and moveable personal property.

55.    The presence or imminent threat of the presence of the Coronavirus and the consequent closures also constituted physical damage in the sense that they eliminated or destroyed the function of EWC Fresno's premises, making the location useless or uninhabitable.

F.    **Insurance Defendants' Denial of Plaintiffs' Claim**

56.    On or shortly after **March 19, 2020**, Plaintiffs filed a claim with Insurance Defendants requesting coverage under the Policy for Plaintiffs' lost Business Income due to the Closure Orders and the damage caused by the presence of the Coronavirus in and around the Insured Premises.

57.    On **April 8, 2020**, Hartford issued written correspondence to Plaintiffs stating that it was denying the claim, and they did so without having conducted any inspection or review of the Insured Premises.

58.    On information and belief, Insurance Defendants accepted the Policy premiums paid by Plaintiffs with no intention of providing any coverage under the applicable coverages for losses from closure orders issued by civil authorities and from an epidemic or pandemic.

59.    On information and belief, Insurance Defendants rejected Plaintiffs' claims in bad faith as part of a policy to limit its losses during this pandemic, notwithstanding that the Policy provides coverage for Plaintiffs' losses.

## X.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

60.    Plaintiffs re-allege and incorporate by reference into this cause of action all allegations set forth in this Complaint.

61.    At all times relevant, Plaintiffs have paid all premiums and fulfilled or performed all their obligations under the Policy.

62.    Insurance Defendants had contractual duties to provide Plaintiffs with insurance coverage under the applicable Policy coverages, including those coverages specifically alleged herein.

63.    In denying Plaintiffs' insurance claim, and otherwise refusing to perform under the Policy, Insurance Defendants breached those duties.

64.    As a result of those breaches, Plaintiffs have been damaged in the amount of coverage to which they are entitled under the Policy, and in an amount to be proved at trial, and for which Plaintiffs seek compensatory, general, and other monetary damages (including all foreseeable consequential and incidental damages for diminution in value, loss of use, and other incidental damages and out-of-pocket expenses) in an amount to be determined at trial, plus interest.

## SECOND CAUSE OF ACTION

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

65.     Plaintiffs re-allege and incorporate by reference into this cause of action all allegations set forth in this Complaint.

66.     When Insurance Defendants issued the Policy, they undertook and were bound to the covenants implied by law that they would deal fairly and in good faith with Plaintiffs, and not engage in any acts, conduct, or omissions that would impair or diminish the rights and benefits due Plaintiffs, according to the terms of the Policy.

67.     Upon information and belief, Insurance Defendants breached the implied covenant of good faith and fair dealing arising out of the Policy by, unreasonably and in bad faith, denying Plaintiffs insurance coverage to which they are entitled under the Policy. Specifically, among other conduct, Defendants (a) failed or refused to perform a fair, objective, and thorough investigation of the claim as required by the California Insurance Code; (b) asserted coverage defenses that were legally and/or factually invalid and thereby delaying resolution of Plaintiffs' claim; (c) placed unduly restrictive interpretations on the Policy terms for the purpose of denying coverage due under the Policy; (d) failed to give Plaintiffs' interests equal consideration with its own; and (e) forced Plaintiffs to institute litigation to recover amounts due under the Policy.

68.     In committing the above-referenced breaches, Insurance Defendants intended to and did vex, damage, annoy, and injure Plaintiffs. Said conduct was intentional, willful, and with conscious disregard of Plaintiffs' rights, and was malicious, oppressive and/or fraudulent under California Civil Code section 3294, thereby entitling Plaintiffs to punitive and exemplary damages against each of the Insurance Defendants.

69.     As a direct and proximate result of the above-referenced breach, Plaintiffs have had to retain attorneys to enforce their right to the insurance coverage to which they are entitled under the Policy, and have thereby been injured and damaged.

70.     Plaintiffs, therefore, are entitled to recover and seek in connection with this Cause of Action (a) compensatory, general, and other monetary damages (including all foreseeable consequential and incidental damages for diminution in value, loss of use, and other incidental

1    damages and out-of-pocket expenses) in an amount to be determined at trial, plus interest;

2    (b) punitive and exemplary damages in an amount to be determined at trial; (c) Plaintiffs' costs of

3    suit; and (d) Plaintiffs' reasonable attorney's fees in connection with this action.

4    ## THIRD CAUSE OF ACTION

5    ## BAD FAITH DENIAL OF INSURANCE CLAIM

6    71.    Plaintiffs re-allege and incorporate by reference into this cause of action all

7    allegations set forth in this Complaint.

8    72.    Defendants have put their own interests above those of Plaintiffs and have, in bad

9    faith, failed or refused to perform their obligations under the Policy and under the laws of California.

10   73.    Defendants denied Plaintiffs' claim in bad faith by, among other conduct, (a) failing

11   or refusing to perform a fair, objective, and thorough investigation of the claim as required by the

12   California Insurance Code; (b) asserting coverage defenses that were legally and/or factually invalid

13   and thereby delaying resolution of Plaintiffs' claim; (c) placing unduly restrictive interpretations on

14   the Policy terms for the purpose of denying coverage due under the Policy; (d) failing to give

15   Plaintiffs' interests equal consideration with its own; and (e) forcing Plaintiffs to institute litigation

16   to recover amounts due under the Policy.

17   74.    Upon information and belief, there are numerous other individuals and groups

18   insured by Defendants who were or are similarly situated to Plaintiffs and who are also being denied

19   benefits under the same unlawful and non-applicable policy provisions and/or exclusions being

20   applied to Plaintiffs.  At such time as Plaintiffs learn the names of such persons, Plaintiffs may seek

21   leave of court to join such persons as plaintiffs in this action.

22   75.    Based on the above, Plaintiffs allege that Defendants have committed institutional

23   bad faith that is part of a repeated pattern of unfair practices and not an isolated occurrence.  The

24   pattern of unfair practices constitutes a conscious course of wrongful conduct that is firmly grounded

25   in Defendants' established company policy.

26   76.    As a proximate result of the aforementioned bad faith conduct by Defendants,

27   Plaintiffs have suffered and will continue to suffer damages.  These damages include interest on the

28

1 | withheld and unreasonably delayed payments due under the Policy and other special economic and
2 | consequential damages, of a total amount to be shown at trial.

3 |      77.    As a further proximate result Defendants' bad faith conduct, Plaintiffs were
4 | compelled to retain legal counsel to obtain the coverage benefits due under the Policy. Therefore,
5 | Defendants are liable to Plaintiffs for those attorney fees, witness fees, and costs of litigation
6 | reasonably necessary and incurred by Plaintiffs in order to obtain the benefits of the Policy.

7 |      78.    Defendants carried out their bad-faith conduct with a willful and conscious disregard
8 | of Plaintiffs' rights or subjected Plaintiffs to cruel and unjust hardship in conscious disregard of its
9 | rights. Alternatively, Defendants' conduct constituted an intentional misrepresentation, deceit, or
10 | concealment of a material fact known to Defendants with the intention of depriving Plaintiffs of
11 | property or legal rights, or of causing Plaintiffs other injury. Defendants' conduct constitutes malice,
12 | oppression, or fraud under California Civil Code section 3294, entitling Plaintiffs to punitive
13 | damages in an amount appropriate to punish or set an example of Defendants and to deter future
14 | similar conduct.

15 | **FOURTH CAUSE OF ACTION**

16 | **UNFAIR BUSINESS PRACTICES UNDER BUS. & PROF. CODE § 17200, ET SEQ.**

17 |      79.    Plaintiffs re-allege and incorporate by reference into this cause of action all
18 | allegations set forth in this Complaint as though fully set forth herein.

19 |      80.    California's Unfair Competition Law, as codified by California Business &
20 | Professions Code sections 17200, *et seq.*, protects both consumers and competitors by promoting
21 | fair competition in commercial markets for goods and services. California's Unfair Competition
22 | Law is interpreted broadly and provides a cause of action for any unlawful, unfair, or fraudulent
23 | business act or practice. Any unlawful, unfair, or fraudulent business practice that causes injury to
24 | consumers falls within the scope of California's Unfair Competition Law.

25 |      81.    Defendants' acts and practices, as described herein, constitute unlawful or unfair
26 | business practices against Plaintiffs in violation of California Business and Professions Code section
27 | 17200, *et seq.*

28 |

82.     These unlawful or unfair acts and practices include, but are not limited to, (a) failing or refusing to perform a fair, objective, and thorough investigation of the claim as required by the California Insurance Code; (b) asserting coverage defenses that were legally and/or factually invalid and thereby delaying resolution of Plaintiffs' claim; (c) placing unduly restrictive interpretations on the Policy terms for the purpose of denying coverage due under the Policy; (d) failing to give Plaintiffs' interests equal consideration with its own; (e) forcing Plaintiffs to institute litigation to recover amounts due under the Policy; (f) charging and accepting Plaintiffs' premiums in exchange for coverage or purported coverage for losses caused by an order of a civil authority, by direct physical damage to the Insured Premises, by a virus, and by other business interruptions, without any intention of satisfying those claims in an emergency such as the COVID-19 pandemic and the related Closure Orders; and (g) denying Plaintiffs' claims as part of a company-wide and/or industry-wide policy of denying all business interruption claims related to the COVID-19 pandemic.

83.     These unlawful or unfair acts and practices also include, but are not limited to, inserting deep into the fine print of the Policy's Limited Virus Coverage an absurd coverage requirement that is factually impossible to satisfy, then offering that Limited Virus Coverage to Plaintiffs and otherwise inducing Plaintiffs to purchase it, charging and accepting premiums for the Limited Virus Coverage, representing in the Policy Declarations that Plaintiff has Limited Virus Coverage, and then when Plaintiff makes a claim, denying that claim (in part) because of Plaintiffs' failure to satisfy the impossible coverage requirement. The impossible coverage requirement is that the virus that causes damage to the insured must "[be] the result of one of more of the following causes . . . (1) A "specified cause of loss" [which the Policy elsewhere defines as "Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage"] other than fire or lightning . . . [or] (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property . . . ." (Policy, Limited Fungi, Bacteria or Virus Coverage Form § B.1.a.). But as a matter of scientific fact, viruses cannot be "the result of" explosion, windstorm or hail, smoke, aircraft or vehicles, falling objects, or any of the other "specified cause of loss," or of an "Equipment Breakdown Accident," as those terms are

defined by the Policy.

84.     Any claimed justification for Defendants' conduct is outweighed by the gravity of the consequences to Plaintiffs.  Defendants' acts and practices are immoral, unethical, oppressive, unconscionable, or substantially injurious to Plaintiffs, and/or have a tendency to deceive Plaintiffs.

85.     By reason of Defendants' fraudulent, deceptive, unfair, and other wrongful conduct as alleged herein, said Defendants violated California Business and Professions Code sections 17200, *et seq.*, by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of the benefits of Defendants' financial products and services.

86.     Defendants perpetrated these acts and practices against Plaintiffs, and as a direct and proximate result of the foregoing, Plaintiffs have suffered and continue to suffer damages in a sum which is, as of yet, unascertained.  Pursuant to California Business and Professions Code section 17203, Plaintiffs are entitled to and seek restitution of all the monies paid to Defendants for retaining benefits that were due and owing to Plaintiffs (with interest thereon), disgorgement of all Defendants' profits arising out of their unlawful conduct (with interest thereon), payment of all benefits due to Plaintiffs under the Policy that Defendants wrongfully retained by means of its unlawful business practices, and/or to injunctive relief to enjoin Defendants unfair business practices in the future.

87.     With respect to injunctive relief, Defendants wrongfully denied Plaintiffs' insurance claim based on erroneous interpretations of the Policy, in order to avoid their financial obligations to Plaintiffs thereunder.  Given the likely extended time period of the regional presence of the Coronavirus and COVID-19 cases, and the likely continued effect of the Closure Orders, Plaintiffs will almost certainly have similar insurance claims in the future, and Defendants will almost certainly apply the same or similar erroneous interpretations of the Policy to wrongfully deny coverage. If Defendants' conduct in this manner is not restrained and enjoined, Plaintiffs will suffer great and irreparable harm, and Defendants seem committed to continuing their unfair and unlawful business practices of erroneously denying Plaintiffs' claims.  Defendants will continue to act in their own self-interest and to commit the acts that have damaged Plaintiffs, and that continue to do so.

88.    Pursuant to California Code of Civil Procedure section 1021.5, Plaintiffs are entitled to recover and seek their reasonable attorney's fees in connection with Defendants' unfair competition claims, the substantial benefit doctrine, and/or the common fund doctrine.

## FIFTH CAUSE OF ACTION

## FRAUDULENT MISREPRESENTATION

89.    Plaintiffs re-allege and incorporate by reference into this cause of action all allegations set forth in this Complaint.

90.    Defendants committed actionable fraud against Plaintiffs by way of affirmative misrepresentations and the concealment of material facts.  For example, Defendants affirmatively misrepresented that there was full coverage for business interruption whenever there was a business interruption caused by physical damage.  At all relevant times, Defendants knew and concealed from the Plaintiffs that there was a policy that Defendants would not pay any claims during a pandemic, notwithstanding the express provision for such coverage in the Policy.

91.    Defendants made or approved materially false and misleading statements to Plaintiffs when it sold Plaintiffs the Policy.

92.    Defendants made the foregoing false statements and misrepresentations that omitted and concealed material facts despite being aware of their falsity.

93.    Plaintiffs reasonably and actually relied on Defendants' misrepresentations and concealments.

94.    As a direct and proximate result of such unlawful conduct, Plaintiffs have suffered, and will continue to suffer, damages in an amount to be proven at trial.

95.    Defendants' acts were undertaken intentionally and in conscious disregard of Plaintiffs' rights, and were malicious, fraudulent, and oppressive.

96.    Plaintiffs are entitled to damages, and they should be awarded exemplary and punitive damages in an appropriate amount to punish Defendants and to deter similar fraudulent conduct in the future.

## SIXTH CAUSE OF ACTION

## CONSTRUCTIVE FRAUD

97.    Plaintiffs re-allege and incorporate by reference into this cause of action all allegations set forth in this Complaint.

98.    Defendants owe fiduciary and quasi-fiduciary duties to Plaintiffs, including duties of loyalty, due care, good faith, and fair dealing in connection with their actions under the Policy.

99.    By the conduct alleged herein, Defendants took unfair advantage of and did not act in or consider the best interests of Plaintiffs, but rather acted solely in their own interests.

100.    As a direct and proximate result of Defendants' constructive fraud, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

101.    Defendants' acts were also malicious, fraudulent, and oppressive, and undertaken intentionally and in conscious disregard of Plaintiffs' rights.

102.    Plaintiffs are entitled to damages, and should be awarded exemplary and punitive damages in an appropriate amount to punish Defendants and to deter similar fraudulent conduct in the future.

## SEVENTH CAUSE OF ACTION

## UNJUST ENRICHMENT

103.    Plaintiffs re-allege and incorporate by reference into this cause of action all allegations set forth in this Complaint.

104.    As a result of Defendants' conduct, as set forth above, Plaintiffs may lose the financial benefit of the amounts that Plaintiffs paid for those portions of the Policy that were illegal, unfair, or deceptive.

105.    By their wrongful acts and omissions, Defendants, and each of them, were unjustly enriched at the expense of and to the detriment of Plaintiffs.

106.    Defendants were unjustly enriched, among other reasons, by offering, and accepting premiums paid for, insurance coverages within the Policy that purport and appear at first glance to provide certain coverages, such as the Limited Virus Coverage, but when read according their plain meaning, lead to absurd requirements that are impossible to satisfy, such as only covering losses

1  caused by viruses that were the result of windstorms, hail, aircraft, falling objects, and other
2  phenomena and events that are incapable of creating or otherwise resulting in a virus.

3      107.   To enforce such coverage requirements would be unconscionable, void as against
4  public policy, and inequitable.  In the event such coverage requirements are interpreted and applied
5  according to their plain meaning (they should not be), it would be against equity to permit
6  Defendants to retain the payments that they received from Plaintiffs for any such aspect of the Policy.
7  This is because it is an illegal, deceptive, unfair, and/or fraudulent business practice to induce
8  Plaintiffs or any other person to purchase insurance coverage that will never cover a loss.

9      108.   As a direct and proximate result of Defendants' conduct, Plaintiffs have been
10  damaged and are entitled to restitution in an amount to be determined at trial.  Plaintiffs seek
11  restitution from Defendants and seek an order from this Court disgorging all monies paid to
12  Defendants as a result of the illegal, deceptive, unfair, and/or fraudulent business practices.

13      109.   Plaintiffs have no adequate remedy at law.

14                         **EIGHTH CAUSE OF ACTION**

15                          **DECLARATORY RELIEF**

16      110.   Plaintiffs re-allege and incorporate by reference into this cause of action all
17  allegations set forth in this Complaint.

18      111.   Under California Code of Civil Procedure section 1060, *et seq.*, the court may declare
19  rights, duties, statuses, and other legal relations, regardless of whether further relief is or could be
20  claimed.

21      112.   An actual controversy has arisen between Plaintiffs and Defendants as to their
22  respective rights and duties under the Policy.

23      113.   Resolution of the parties' respective rights and duties under the Policy by declaration
24  of the Court is necessary, as there exists no adequate remedy at law.

25      114.   Plaintiffs allege and contend, with respect to the Policy's Civil Authority Coverage,
26  that each of the Closure Orders triggers that coverage because (a) each of the Closure Orders is an
27  order of a civil authority, (b) each of the Closure Orders specifically prohibits access to the Insured
28  Premises by prohibiting all potential on-premises dining customers and workers from accessing the

1 | Insured Premises, (c) said prohibition of access by each of the Closure Orders has been continuous
2 | and ongoing since the Orders were issued, such that access has not subsequently been permitted, (d)
3 | each of the Closure Orders prohibits said access as the direct result of a Covered Cause of Loss in
4 | the immediate area of the Insured Premises, (e) no Policy coverage exclusions or limitations apply
5 | to exclude or limit coverage, (f) Plaintiffs have suffered actual and covered loss of Business Income
6 | in an amount to be determined at trial, and (g) coverage under the Policy should begin as of March
7 | 19, 2020.

8 |      115.    Plaintiffs allege and contend that the Policy's Lost Business Income Coverage is
9 | triggered because (a) Plaintiffs have sustained actual loss of Business Income due to the closure of
10 | EWC Fresno, (b) said closure constitutes a necessary suspension of EWC Fresno's operations under
11 | the Policy, (c) this suspension has been and is caused by direct physical loss of or physical damage
12 | to property at the Insured Premises, including personal property in the open (or in a vehicle) within
13 | 1,000 feet of the Scheduled Premises, due to the presence of Coronavirus, (d) the presence of
14 | Coronavirus is a Covered Cause of Loss, and (e) some or all of the period of EWC Fresno's closure
15 | is within the period of restoration under the Policy.

16 |      116.    Plaintiffs allege and contend that the Policy's Extra Expense Coverage is triggered
17 | because (a) Plaintiffs have incurred Extra Expense due to the closure of EWC Fresno, (b) said
18 | closure constitutes a necessary suspension of EWC Fresno's operations under the Policy, (c) this
19 | suspension has been and is caused by direct physical loss of or physical damage to property at the
20 | Scheduled Premises, including personal property in the open (or in a vehicle) within 1,000 feet of
21 | the Scheduled Premises, due to the presence of Coronavirus, (d) the presence of Coronavirus is a
22 | Covered Cause of Loss, and (e) some or all of the Extra Expense was incurred during the period of
23 | restoration under the Policy.

24 |      117.    Plaintiffs allege and contend that the presence of the Coronavirus in and on the
25 | Insured Premises triggers the Policy's Limited Virus Coverage because (a) the "specified cause of
26 | loss" and "Equipment Breakdown Accident" coverage requirement is unconscionable, void as
27 | against public policy, inequitable, or otherwise unenforceable for the reasons alleged herein, (b) the
28 | loss and the cause of loss arose during the policy period, and (c) all reasonable means were used to

save and preserve the property from further damage. Further, (d) the Limited Virus Coverage provides up to $50,000 in coverage for 30 days lost business income (per the declarations), as well as direct physical loss or damage and the costing of testing for virus in the Scheduled Premises.

118.    Plaintiffs allege and contend that Defendants wrongly denied coverage with respect to all the foregoing provisions.

119.    Upon information and belief, Plaintiffs allege that Defendants dispute and deny each of Plaintiffs' contentions set forth in this Cause of Action.

120.    Plaintiffs, therefore, seek a declaratory judgment regarding each of Plaintiffs' contentions set forth in this Cause of Action.  A declaratory judgment determining that Plaintiffs are due coverage under the Policy, as set forth above, will help to ensure the survival of its business during this prolonged closure made necessary by the Closure Orders and by the presence of Coronavirus at and around the Insured Premises during this global pandemic.

## NINTH CAUSE OF ACTION

## EQUITABLE INJUNCTIVE RELIEF

121.    Plaintiffs re-allege and incorporate by reference into this cause of action all allegations set forth in this Complaint.

122.    Upon information and belief, Plaintiffs allege that, unless enjoined by order of the Court, Defendants will continue to operate their companies for their sole benefit and to the detriment of Plaintiffs.

123.    No adequate remedy exists at law for the injuries alleged herein, and Plaintiffs will suffer great and irreparable injury if Defendants' conduct is not immediately enjoined and restrained.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants, as follows:

A.    For a declaration adopting each of Plaintiffs' contentions set forth in the above Cause of Action for Declaratory Relief;

B.    For injunctive relief enjoining and restraining Defendants' unlawful conduct as alleged herein, including but not limited to their unfair and unlawful business practices and their wrongful denials of coverage under the Policy;

C.    For compensatory, general, and other monetary damages (including all foreseeable consequential and incidental damages for diminution in value, loss of use, and other incidental damages and out-of-pocket expenses) in an amount to be determined at trial;

D.    For exemplary and punitive damages in an amount to be determined at trial;

E.    For Plaintiffs' costs of suit;

F.    For Plaintiffs' reasonable attorney's fees incurred in this action pursuant to statute;

G.    For pre-judgment interest and all other interest to which Plaintiffs are entitled; and

H.    For such other relief as the Court may deem proper.

Dated: May 20, 2020                    COTCHETT, PITRE, & McCARTHY, LLP

By: _____
NANCI E. NISHIMURA
*Counsel for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs FRANKLIN EWC, INC., and KATHY FRANKLIN hereby demand a jury trial on all issues so triable.

Dated: May 20, 2020                    COTCHETT, PITRE, & McCARTHY, LLP

By: _____
NANCI E. NISHIMURA
*Counsel for Plaintiffs*

A True Copy
Attest:
Process Server
Christine Foran

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF          27

SUPERIOR COURT - MARTINEZ
COUNTY OF CONTRA COSTA
MARTINEZ, CA, 94553

FRANKLIN EWC, INC VS THE HARTFORD FINANCIAL SERVIC

NOTICE OF CASE MANAGEMENT CONFERENCE                CIVMSC20-00888

1.  NOTICE: THE CASE MANAGEMENT CONFERENCE HAS BEEN SCHEDULED FOR:

DATE:  10/07/20        DEPT:  33        TIME:   8:30

THIS FORM, A COPY OF THE NOTICE TO PLAINTIFFS, THE ADR INFORMATION
SHEET, A BLANK CASE MANAGEMENT CONFERENCE QUESTIONNAIRE, AND A BLANK
STIPULATION FORM ARE TO BE SERVED ON OPPOSING PARTIES.  ALL PARTIES
SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT OR THEIR ATTORNEY
OF RECORD MUST APPEAR.

2.  You may stipulate to an earlier Case Management Conference.  If
all parties agree to an early Case Management Conference, please
contact the Court Clerk's Office at (925)608-1000 for Unlimited Civil
and Limited Civil cases for assignment of an earlier date.

3.  You must be familiar with the case and be fully prepared to par-
ticipate effectively in the Case Management Conference and to discuss
the suitability of this case for the EASE Program, private mediation,
binding or non-binding arbitration, and/or use of a Special Master.

4.  At any Case Management Conference the court may make pretrial
orders including the following:

    a.  an order establishing a discovery schedule
    b.  an order referring the case to arbitration
    c.  an order transferring the case to limited jurisdiction
    d.  an order dismissing fictitious defendants
    e.  an order scheduling exchange of expert witness information
    f.  an order setting subsequent conference and the trial date
    g.  an order consolidating cases
    h.  an order severing trial of cross-complaints or bifurcating
        issues
    i.  an order determining when demurrers and motions will be filed

SANCTIONS
If you do not file the Case Management Conference Questionnaire or
attend the Case Management Conference or participate effectively in
the Conference, the court may impose sanctions (including dismissal of
the case and payment of money).

        Clerk of the Superior Court of Contra Costa County
I declare under penalty of perjury that I am not a party to this
action, and that I delivered or mailed a copy of this notice to the
person representing the plaintiff/cross-complainant.

Dated:  05/21/20            _____
                            BROOKE POOL
                            Deputy Clerk of the Court



**CONTRA COSTA COUNTY SUPERIOR COURT**
**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

---

All judges in the Civil Trial Delay Reduction Program agree that parties should consider using Alternative Dispute Resolution (ADR) to settle their cases. To tell the court you will use ADR:

- Choose ADR on the *Case Management Form (*CM-110*)*;
- File a *Stipulation and Order to Attend ADR and Continue First Case Management Conference 90-Days* (local court form); or
- Agree to ADR at your first court appearance.

*Questions?*  *Email adrweb@contracosta.courts.ca.gov or call (925) 608-2075*

---

## MEDIATION

Mediation is often faster and less expensive than going to trial. Mediators help people who have a dispute talk about ways they can settle their case. Parties email, fax or visit the ADR Programs office to get a list of mediators. After parties have agreed on a mediator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the mediator at least 5 court days before mediation starts.

ALL parties and attorneys must go to mediation. Mediation can be held whenever and wherever the parties and the mediator want, as long as they finish before the court deadline. In some kinds of court cases, parties have the chance to mediate in the courthouse on their trial day.

Most mediators begin by talking with the parties together, helping them focus on the important issues. The mediator may also meet with each party alone. Mediators often ask parties for their ideas about how to settle the case. Some mediators tell the parties how much money they think a case is worth, or tell them what they think might happen if the case went to trial. Other mediators help the parties decide these things for themselves. No matter what approach a mediator takes, decisions about settling a case can only be made when all the parties agree.

If the parties go through the court ADR program, mediators do not charge fees for the first half hour spent scheduling or preparing for mediation. They also do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediators regular fees. Some mediators ask for a deposit before mediation starts. Mediators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the mediation. A party whose court fees have been waived (cancelled) may ask if their mediation fees or deposit can be waived.

If parties agree about how they will settle their case, they can choose to keep it private, write it up as a contract, or ask the judge to make it a court order. What parties say and agree to in mediation is confidential (private).

## PRIVATE MEDIATION

Private mediation works in the same way as judicial mediation, but the parties do not go through the ADR Programs office. Parties choose a mediator on their own, and pay the mediator's normal fees.

## JUDICIAL ARBITRATION (non-binding)

In judicial arbitration, an independent attorney (arbitrator) looks at the evidence, listens to the parties and their witnesses, and decides how the case will be settled. Judicial arbitration is less formal than court. Parties email, fax or visit the ADR Programs office to get a list of arbitrators. If they cannot agree on an arbitrator, the court will assign one. The judge can send cases to arbitration if there is less than $50,000 in dispute. The person who started the court case can make sure the case goes to arbitration if they agree to limit the amount they are asking for to $50,000. Parties can also agree they want to use judicial arbitration. The arbitrator must send their decision (award) to the court within 10 days of the last hearing. The award becomes a court judgment unless a party asks the court to review the case within 60 days. Parties must use the ADR-102 form to ask for a new court hearing (called a trial de novo.) Judicial arbitrators charge $150 per case or per day.

## PRIVATE ARBITRATION (non-binding and binding)

Private, non-binding arbitration is the same as judicial arbitration, except that the parties do not go through the ADR Programs office to choose an arbitrator, and the arbitrator's award will not become a judgment of the court unless all parties agree. Parties must pay the arbitrator's normal fees.

Binding arbitration is different from judicial or private non-binding arbitration because the arbitrator's decision is final. Parties give up their right to have a judge review their case later (except for reasons listed in California Code of Civil Procedure, Section 1286.2.) Binding arbitration rules are listed in California Code of Civil Procedure, Sections 1280-1288.8. Parties may also agree any time before the judge has made a decision that ends the case to switch to binding arbitration. Parties choose the arbitrator on their own, and must pay the arbitrator's normal (not $150) fees.

## SETTLEMENT MENTOR CONFERENCE

Settlement mentors are independent, experienced trial attorneys that a judge has assigned to help parties look for ways to settle their case. The conference is free and is held in the courthouse. It is often held on the morning of trial, but it can be scheduled anytime. These conferences usually last two or three hours. Parties do not present evidence and do not call witnesses. Parties can ask the settlement mentor to keep some information confidential (private) from the other party, but not from the judge. The settlement mentor can share any information with the judge, or involve the judge in settlement discussions. All principals, clients, and claims representatives must attend the settlement mentor conference.

## NEUTRAL CASE EVALUATION

In neutral case evaluation, an independent attorney (evaluator) reviews documents and listens to each party's side of the case. The evaluator then tells the parties what they think could happen if the case went to trial. Many people use the evaluator's opinion to reach an agreement on their own, or use this information later in mediation or arbitration to settle their case.

Parties email, fax or visit the ADR Programs office to get a list of evaluators. After parties have agreed on an evaluator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the evaluator at least 5 court days before evaluation starts. ALL parties and their attorneys must go to neutral case evaluation. The evaluation can be held whenever and wherever the parties and the evaluator want, as long as they finish before the court deadline. If the parties go through the court's ADR program, evaluators do not charge any fees for the first half hour spent scheduling or preparing for the evaluation conference. They also do not charge fees for the first two hours of the evaluation. If parties need more time, they must pay that evaluators regular fees. Some evaluators ask for a deposit before evaluation starts. Evaluators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the evaluation. A party whose court fees have been waived (cancelled) may ask if their evaluation fees or deposit can be waived.

## TEMPORARY JUDGE

Some parties want a trial, but want to choose who will decide the case and when the trial will take place. Parties can agree on an attorney that they want the court to appoint as a temporary judge for their case. (See Article 6, Section 21 of the State Constitution and Rule 2.830 of the California Rules of Court.) Temporary judges have nearly the same authority as a superior court judge to conduct a trial and make decisions. As long as the parties meet the court deadline, they can schedule the trial at their own and the temporary judge's convenience.

Each of the temporary judges on the court's panel has agreed to serve at no charge for up to 5 court days. If the parties need more time, they must pay that person's regular fees. All parties and their lawyers must attend the trial, and provide a copy of all briefs or other court documents to the temporary judge at least two weeks before the trial. These trials are similar to other civil trials, but are usually held outside the court. The temporary judge's decision can be appealed to the superior court. There is no option for a jury trial. The parties must provide their own court reporter.

## SPECIAL MASTER

A special master is a private lawyer, retired judge, or other expert appointed by the court to help make day-to-day decisions in a court case. The special master's role can vary, but often includes making decisions that help the discovery (information exchange) process go more smoothly. He or she can make decisions about the facts in the case. Special masters can be especially helpful in complex cases. The trial judge defines what the special master can and cannot do in a court order.

Special masters often issue both interim recommendations and a final report to the parties and the court. If a party objects to what the special master decides or reports to the court, that party can ask the judge to review the matter. In general, the parties choose (by stipulation) whom they want the court to appoint as the special master, but there are times (see California Code of Civil Procedure Section 639), when the court may appoint a special master or referee without the parties' agreement. The parties are responsible to pay the special master's regular fees.

## COMMUNITY MEDIATION SERVICES

Mediation Services are available through non-profit community organizations. These low-cost services are provided by trained volunteer mediators.  For more information about these programs contact the ADR Program at adrweb@contracosta.courts.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Nanci E. Nishimura (152621); Brian Danitz (247403); James G. Dallal (277826)
Anya Thepot (318430)
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200, Burlingame, CA 94010
TELEPHONE NO.: (650) 697-6000    FAX NO.: (650) 697-0577
ATTORNEY FOR *(Name):* Plaintiff: Franklin EWC, Inc. and Kathy Franklin

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS: 725 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME: Wakefield Taylor Courthouse

FILED
MAY 21 2020
K. BIEKER CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By _____ B. Pool, Deputy Clerk

CASE NAME:
Franklin EWC, Inc., et al. v. The Hartford Financial Services Group Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: C20-00888 |
|---|---|---|
| [✓] Unlimited    [ ] Limited | [ ] Counter    [ ] Joinder | JUDGE: |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[✓] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary    b. [✓] nonmonetary; declaratory or injunctive relief    c. [✓] punitive
4. Number of causes of action *(specify):* 9
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 20, 2020
Nanci E. Nishimura
(TYPE OR PRINT NAME)                    ► *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

A True Copy
Attest:
Process Server
Christina Foran

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the *primary* cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF CONTRA COSTA

_____

_____

Plaintiff(s) / Cross Plaintiff(s)

vs.

_____

_____

Defendant(s) / Cross Defendant(s)

### _ADR Case Management Stipulation and Order_
*(Unlimited Jurisdiction Civil Cases)*

CASE NO: _____

---

► ALL PARTIES STIPULATING TO ADR AND DELAYING THEIR CASE MANAGEMENT CONFERENCE 90 DAYS MUST SUBMIT THE ORDER FOR THE JUDGE'S SIGNATURE AND FILE THIS FORM AT LEAST 15 DAYS BEFORE THEIR CASE MANAGEMENT CONFERENCE. (NOT AVAILABLE IN COMPLEX LITIGATION CASES.)

► PARTIES MUST ALSO SEND A COPY OF THIS FILED STIPULATION AND ORDER TO THE ADR OFFICE: EMAIL adrweb@contracosta.courts.ca.gov  FAX: (925) 608-2109  MAIL: P.O. BOX 911, MARTINEZ, CA 94553

---

Counsel and all parties agree to delay their case management conference 90 days to attend ADR and complete pre-ADR discovery as follows:

1. Selection and scheduling for Alternative Dispute Resolution (ADR):
   a. The parties have agreed to ADR as follows:
      i. ❑ Mediation  (❑ Court-connected ❑ Private)
      ii. ❑ Arbitration  (❑ Judicial Arbitration (non-binding)  ❑ Private (non-binding)  ❑ Private (binding))
      iii. ❑ Neutral case evaluation
   b. The ADR neutral shall be selected by *(date)*: _____ *(no more than 14 days after filing this form)*
   c. ADR shall be completed by *(date)*: _____ *(no more than 90 days after filing this form)*

2. The parties will complete the following discovery plan:
   a. ❑ Written discovery:  (❑ Additional page(s) attached)
      i. ❑ Interrogatories to:
      ii. ❑ Request for Production of Documents to:
      iii. ❑ Request for Admissions to:
      iv. ❑ Independent Medical Evaluation of:
      v. ❑ Other:
   b. ❑ Deposition of the following parties or witnesses: (❑ Additional page(s) attached)
      i. _____
      ii. _____
      iii. _____
   c. ❑ No Pre-ADR discovery needed

3. The parties also agree: _____

4. Counsel and self-represented parties represent they are familiar with and will fully comply with all local court rules related to ADR as provided in Title Three; Chapter 5, will pay the fees associated with these services, and understand that if they do not, without good cause, comply with this stipulation and all relevant local court rules, they may be subject to sanctions.

| Counsel for Plaintiff *(print)* | Fax | Counsel for Defendant *(print)* | Fax |
|---|---|---|---|
| Signature | | Signature | |
| Counsel for Plaintiff *(print)* | Fax | Counsel for Defendant *(print)* | Fax |
| Signature | | Signature | |

---

Pursuant to the Stipulation of the parties, and subject to the *Case Management Order* to be filed, IT IS SO ORDERED that the Case Management Conference set for _____ is vacated and rescheduled for _____ at (8:30 a.m. / _____ ) Plaintiff / Plaintiff's counsel must notify all parties of the new case management conference.

Dated: _____       _____

Judge of the Superior Court

## Superior Court of California, County of Contra Costa

## NOTICE TO DEFENDANTS
In Unlimited Jurisdiction Civil Actions

**YOU ARE BEING SUED.**  The packet you have been served should contain:

    a.    The Summons

    b.    The Complaint

    c.    The Notice of Case Management (shows hearing date and time)

    d.    Blank: Case Management Statement (Judicial Council Form CM-110)

    e.    Blank: Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days (Local Court Form CV-655b)

    f.    Alternative Dispute Resolution (ADR) Information  (Local Court Form CV-655c-INFO)

---

 **WHAT DO I DO NOW?** 

**You must:**

1. **Prepare your response**   YOU COULD LOSE YOUR CASE—even before it is heard by a judge or before you can defend yourself, if you do not prepare and file a response on time. See the other side of this page for types of responses you can prepare.

2. **Complete the** *Case Management Statement (CM-110)*

3. **File and serve your court papers on time**   Once your court forms are complete, you must file 1 original and 2 copies of the forms at court. An adult who is NOT involved in your case must serve one set of forms on the Plaintiff. If you were served in person you must file your response in 30 days. If the server left a copy of the papers with an adult living at your home or an adult in charge at your work or you received a copy by mail you must file your response in 40 days.

4. **Prove you served your court papers on time**   by having your server complete a *Proof of Service, (Judicial Council form POS-040)*, that must be filed at the court within 60 days.

5. **Go to court on the date and time given in the** *Notice of Case Management Conference*.

6. **Consider trying to settle your case before trial**   If you and the other party to the case can agree to use mediation, arbitration or neutral case evaluation, the *Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days* can be filed with your other papers. For more information read the enclosed ADR information, visit www.cc-courts.org/adr, or email adrweb@contracosta.courts.ca.gov.

**IMPORTANT! The court recommends consulting an attorney for all or part of your case.  While you may represent yourself, lawsuits can be complicated, and the court cannot give you legal advice.**

---

**COURT FEES:**  You must pay court fees the first time you file your papers.  If you also file a motion, you must pay another fee.  If you cannot afford the fees, you may ask the court to waive (allow you not to pay) fees. Use Judicial Council forms FW-001-INFO [information sheet]; FW-001 [application]; and FW-003 [order].

**COURT FORMS:**  Buy forms at the Law Library (1020 Ward Street, Martinez, CA) or download them for free at: www.courtinfo.ca.gov/forms/

## WHAT KIND OF RESPONSES CAN I FILE?

1. If you disagree with some or all of what the plaintiff says in the complaint because you believe, or know it is not true, you can file an <u>ANSWER</u>.

2. If you have a claim in the same case against the plaintiff, you may file a <u>CROSS-COMPLAINT</u>.

3. If you want to ask the court to do something on your behalf, you may file a <u>MOTION</u> *(See TYPES OF MOTIONS below)*

## HOW DO I PREPARE AN ANSWER?

There are two kinds of Answers you can use, depending on whether the Complaint was verified. You can tell if a Complaint is verified because it says "Verified Complaint" and/or has a signed oath on the last page.

**For complaints that are NOT verified:**

> Use Judicial Council form PLD-050 – General Denial

**For complaints that ARE verified:**

> a. For personal injury, property damage, and wrongful death claims, use Judicial Council PLD-PI-003 (do <u>not</u> check number 2).
>
> b. For contract claims, use Judicial Council PLD-C-010 (do <u>not</u> check number 3a).
>
> c. Be sure to deny <u>every</u> claim with which you disagree. For example, you might write: *"I believe, or know, that the information in paragraph #__ is untrue/incorrect."* Continue your list until you have addressed each paragraph in the Complaint.

**NOTE:** The Judicial Council Answer forms have spaces for your affirmative defenses. Be sure to include them or you may not be able to use them later. To find out what your affirmative defenses might be, go to the law library and ask the librarian to help you find the information you need.

**If you want to file a Cross-Complaint, you must do so at the same time you file the Answer.**

> a. For a personal injury, property damage, and/or wrongful death Cross-Complaint, use Judicial Council form PLD-PI-002.
>
> b. For a contract Cross-Complaint, use Judicial Council PLD-C-001.

## TYPES OF MOTIONS

Written motions are documents that ask the court to do something. You may have to file an *Answer* at the same time. At this point in the case, you can only make Motions from the following list:

1. <u>Demurrer</u> *(the facts stated in the complaint are wrong, or the deadline to file the lawsuit has passed)*;
2. <u>Motion to Strike</u> *(the complaint is unclear, does not follow the law, "doesn't matter", etc.)*;
3. <u>Motion to Transfer</u> *(the complaint is in the wrong court or there's a more appropriate court)*;
4. <u>Motion to Quash Service of Summons</u> *(you were not legally served)*;
5. <u>Motion to Stay</u> *(put the case on hold)*; or
6. <u>Motion to Dismiss</u> *(stops the case)*.

> **NOTE: Motions are very complicated and you may want to hire a lawyer to help you.**

## WHERE CAN I GET MORE HELP?

- **Lawyer Referral Service:** (925) 825-5700
- **Bay Area Legal Aid:** (800) 551-5554
- **Contra Costa County Law Library**     Martinez: (925) 646- 2783     Richmond: (510) 374-3019
- **Ask the Law Librarian:**     www.247ref.org/portal/access_law3.cfm